### 40513. BROWN v. THE STATE.

DECIDED FEBRUARY 26, 1964.

*William Hall,* for plaintiff in error.

*William T. Boyd, Solicitor General, Carter Goode, J. Walter LeCraw, Assistant Solicitors General,* contra.

RUSSELL, Judge. ▪ Error is assigned in the first special ground of the motion for a new trial on the failure of the trial court to charge the jury that if they believed the accused stabbed the deceased, but had a reasonable doubt whether the stabbing produced his death, it would be their duty to acquit as to the offense of murder and then to consider whether the defendant was guilty of the lesser offense of unlawfully stabbing another. The evidence upon which this offense is contended to be involved is that of a doctor who testified that she saw the deceased a few hours before his death, that he was under physical restraint and suffering from delirium tremens, and that in her opinion he would probably die from delirium tremens within a few hours but that, if he did not die from that, he would probably survive. Under this testimony, it was error to fail to give in charge to the jury the lesser offense of stabbing which was involved under the terms of the indictment charging murder "by stabbing," in the event that death as a result of the stabbing was not proved. *Watson v. State,* 116 Ga. 607, 611 (43 SE 32, 21 LRA (NS) 1). If the jury believed that death resulted from stabbing then of course the offense of stabbing would not have been involved because "if such stabbing shall produce death, the offender shall be guilty of murder, or manslaughter, according to the facts and circum-

stances of the case." *Code* § 26-1701. The evidence regarding delirium tremens, including the fact that the deceased had had to be put under physical restraint, together with the opinion testimony that the cause of death was from this source, sufficiently raised the issue and the court should have charged on it. However, what he charged was more favorable to the defendant than the instruction contended for, as the court did in fact state: "If you should have a reasonable doubt that the effect of the wound or wounds alleged to have been inflicted by the accused upon the decedent was the proximate cause of his death, or if you should have a reasonable doubt that the injury directly or materially contributed to the happening of a subsequent accruing immediate cause of death, and have a reasonable doubt that the injury materially accelerated the death, although proximately occasioned by a pre-existing cause, then and in that event, you would be authorized to find that the State had not proved beyond a reasonable doubt every essential allegation in the indictment, and in that event, it would be your duty to render a verdict of not guilty." The jury, if they believed death did not result from the stabbing, would have acquitted the defendant instead of convicting her of the lesser offense, and the error was harmless. *Solesbee v. State*, 204 Ga. 16 (2) (48 SE2d 834) ; *Booker v. State*, 183 Ga. 822 (190 SE2d 356) ; *Dill v. State*, 106 Ga. 683 (4) (32 SE 660). It is sometimes a matter for argument as to whether a charge which is actually more favorable to the defendant than he would have a right to expect as a matter of law is in fact beneficial to him as a matter of fact. For example, there are homicide cases where reversal is necessary because of a failure to charge on manslaughter when manslaughter is in the case; the jury, with a choice of murder or justifiable homicide only, may decide that the homicide was not justifiable and accordingly render a verdict of guilty of murder because they have no option to convict of a lesser offense, and this might be true even though the court charged that if the jury had a reasonable doubt as to the element of malice they should acquit. Here, we believe that the record shows intrinsically that such a situation did not occur. The sentence imposed (12 to 20 years) strongly indicates that the cause of death was not in doubt in the minds of the triors of

fact. If this is true, the offense of stabbing (predicated on the fact that death was not caused by the wound) would never have reached their consideration. No reversible error is shown in grounds 1 and 3 of the amendment to the motion for a new trial.

■ "On a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly distinct, independent, and separate from that for which he is on trial, even though it be a crime of the same sort, is irrelevant and inadmissible, unless there be shown some logical connection between the two from which it can be said that proof of the one tends to establish the other." *Bacon v. State,* 209 Ga. 261 (71 SE2d 615). Objection here is made to the allowance of testimony by a witness that when the defendant and her husband were living on a farm in Cobb County, "I saw her strike him with this lantern I have with me." Counsel for the defendant contended that this was an unrelated act which put the defendant's character in issue and that it was too remote in point of time. The court admitted the evidence, limiting its purpose to "showing motive and malice." The testimony definitely shows no motive for the defendant to stab the victim at another time and place; whether or not it is too remote in point of time to show malice in the general sense of ill feeling between the parties and a desire to injure the decedent on the part of the defendant is the true issue. Evidence of other criminal acts of the same sort has been held too remote in point of time in *Barber v. State,* 95 Ga. App. 763 (98 SE2d 575) (13 years); *Waters v. State,* 80 Ga. App. 559 (56 SE2d 924) (8 years); *Palmer v. State,* 75 Ga. App. 789 (44 SE2d 567) (5 years), and *Clarke v. State,* 5 Ga. App. 93 (62 SE 663) (3 years). The earliest case we have found in this State is *Monroe v. State,* 5 Ga. 85 (3), where it was held (as to a series of actions over a six-month period): "Repeated quarrels may be shown between the parties, to establish the *malo animo;* but you cannot go back to a remote period, and prove a particular quarrel or cause of grudge, unless it be followed up with proof of a continued difference flowing from that source." In *Coxwell v. State,* 66 Ga. 309, 313, it was held that where the prior quarrels (over a two-month period) "were *continuous* from the inception to the ter-

mination of a homicide, and unite the preceding with subsequent acts, thereby shedding light upon motive and explaining conduct, they are admissible." Using these cases as setting the criterion, it was held in *Daniel v. State,* 103 Ga. 202 (3) (29 SE 767), that evidence of a prior quarrel between the defendant and the deceased several months before "and that ever since that time the deceased had borne him ill will and had repeatedly threatened his life" was inadmissible, "it not appearing that what occurred on that occasion was followed up by any subsequent quarrels or difficulties between the accused and the deceased, or that the act of the accused on the previous occasion referred to tended to throw any light whatever upon his motive in taking the life of the deceased."

There is no attempt here to link up the quarrel during which the defendant hit her husband with a lantern while they were living on a farm in Cobb County with the stabbing which took place after they left the farm and were living in a home in Atlanta. The latter event took place on July 8, 1962. The exact time of the former is uncertain. It was apparently in 1956 or 1957, since it happened while the witness was working for the deceased on the farm over a 2½ year period. He testified that the farm was sold "around 1957" and that he also saw the defendant hit the deceased with a stick "in June, around 1956." It is true, as stated in *Campbell v. State,* 123 Ga. 533 (2) (51 SE 644): "Where a wife has been indicted for the murder of her husband, on the trial it is competent to prove declarations or acts on her part near the time of the alleged homicide, tending to show ill will or malice on her part toward him, or to prove a line of conduct or gross ill treatment and cruelty on her part toward him, continuing until shortly before the alleged offense." The length of time involved there was three or four months. The same ruling is made in *Roberts v. State,* 123 Ga. 146 (51 SE 374), where it was stated that error, if any, in allowing the first witness to testify as to prior assaults was cured by the testimony of two other witnesses, the testimony of the three showing repeated acts running from a few months before the homicide to two or three years before the homicide. The statement in *Keener v. State,* 18 Ga. 194 (7) (63 AD 269), that "the remoteness or

nearness of time, as to threats pointing to an act subsequently committed, can make no difference, so far as the competency of the testimony is concerned" referred to prior threats made less than a week before the killing. Prior threats to kill the same victim or a victim of the same class have been held admissible in *Smith v. State,* 167 Ga. 271 (3) (145 SE 517) (1 year) ; *McDaniel v. State,* 100 Ga. 67 (27 SE 158) (2 or 3 years) ; *Shafer v. State,* 191 Ga. 722 (13 SE2d 798) (3 years) and *Everett v. State,* 62 Ga. 65 (3 years). Evidence of a prior wife-beating committed 4 years previously on the same victim was held admissible in *Shaw v. State,* 60 Ga. 246, when the death was accomplished partly by beating. In *June v. State,* 213 Ga. 311 (99 SE2d 70) evidence of a prior assault 4 or 5 years previously was held admissible to show bad feeling and because the evidence was conditionally admitted with an offer to connect it up, after which the objection was not renewed. The only case relaxing the rule further than this is *Vun Cannon v. State,* 208 Ga. 608 (68 SE2d 586) where it was held that: "Threats, though remote, are admissible in murder trials for the purpose of showing motive and malice on the part of the accused." The special circumstances of that case were that 8 years previously the defendant had threatened to kill his son if he did not obey him, and the homicide was committed in a fit of anger when the son did not obey, following a similar threat.

Applying the rationale of the preceding cases to the present one, it appears here that the husband died in July, 1962, as a result of having been stabbed by the defendant. Evidence was properly admitted of prior quarrels in which the deceased was stabbed by the defendant in the spring of 1962 and in the fall of 1961. There is no continuity shown between the incidents described in 1956 and 1957 and those which occurred in 1961 and 1962 in such manner that it may be said that proof of the one tends to establish the other, as is the case with acts closely repeated in point of time, or of threats made at one time and completed at another. With nothing to connect them otherwise, four to six years is too remote under these circumstances, and the testimony objected to should have been excluded.

*Bacon v. State,* 209 Ga. 261, supra, was a fundamental restate-

ment of the law of the admissibility of evidence as to other crimes; it pointed out that the exceptions to the rule had chiseled away the rule that such evidence is ordinarily inadmissible to the extent that courts, while giving lip service to the rule, in effect looked only to the exception, and that such an administration of the law was basically wrong. *Vun Cannon v. State,* 208 Ga. 608, supra, was written prior to the consideration of the problem in *Bacon;* its rationale does not accord with that of the early cases. In any event, in *Vun Cannon* the evidence of the prior threat did in fact go to show motive, i.e., it showed that the defendant had for a long period of time harbored the idea that he might kill his son as a punishment for the latter's disobedience. No such continuity exists between the quarrels between this defendant and her husband on the farm, and the three closely connected stabbings in Atlanta many years later. Special ground 2 of the amended motion requires reversal.

The trial court erred in overruling the motion for new trial. *Judgment reversed. Nichols, P. J., and Hall, J., concur.*