## 34000. NATSON v. THE STATE.

BOWLES, Justice.

The appellant, Robert Natson, Jr., was indicted, tried and found guilty of the murder of James E. Pike and the aggravated assault of Randy Lee Knight. He received a life sentence for the murder and ten years for the aggravated assault. He now appeals to this court. We

affirm.

Briefly, the evidence represented by the state showed a partnership between James E. Pike, Randy Lee Knight, Arthur "Red" Baker, Anthony "Tony" Staley and the appellant, Robert Natson, Jr., to engage in various criminal activities including an illegal drug transaction. On December 12, 1976, Knight, Pike and Staley met at a truck stop in Chatham County. From there the three drove to Sportsman Park for the purpose of discussing a drug transaction. When they arrived at Sportsman Park they saw a Cadillac pulled over to the side of the road with Paul Johnson sitting inside. They parked on the opposite side of the road and got out of the car. Staley went over to the Cadillac and asked Johnson what was the matter. Johnson stated that he had car trouble and needed to have his car "jumped" off. Staley got back into his car, leaving Knight and Pike behind, went down the road and turned around.

Randy Lee Knight testified that while Staley was turning the car around, the appellant and Arthur "Red" Baker emerged from nearby woods. Both had guns and ordered Knight and Pike to go into the woods. Baker began yelling "you set us up" and James Pike replied, "No, we didn't set you up," at which time Baker shot Pike in the stomach. Pike started to run and Baker shot him again.

Appellant then shot Randy Lee Knight in the hand. Knight remained standing until appellant hit him in the head with the butt of his pistol, causing him to fall to the ground where he was hit twice more with the pistol. Following this, Baker and appellant got into the car driven by Staley and drove off. James Pike died from the bullet wounds.

1. Appellant's first enumeration of error contends that the trial court erred in allowing in evidence testimony concerning appellant's participation in an armed robbery which occurred one week prior to the murder and aggravated assault.

Initially, the trial court had ruled out any testimony concerning appellant's involvement in an armed robbery which took place on December 5, 1976. However, near the conclusion of trial and after the state had presented

evidence to show a partnership between the appellant, Jim Pike, Randy Lee Knight, Arthur "Red" Baker and Anthony Staley to engage in a drug transaction, the trial judge reversed himself and stated he would ". . . allow the State to show that this armed robbery was a part of the conspiracy—the drug conspiracy, to seal the deal, as he put it, or to show that they [appellant and other participants] were willing to go through with whatever was to come after the armed robbery, to show motive, intent, scheme. . ."

"The general rule is that on a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent from that for which he is on trial, even though it be a crime of the same sort, is irrelevant and inadmissible." *Williams v. State,* 152 Ga. 498, 521 (110 SE 286) (1921); *Dorsey v. State,* 204 Ga. 345, 349 (49 SE2d 886) (1948); *Thomas v. State,* 239 Ga. 734 (238 SE2d 888) (1977).

Yet, this court has long recognized exceptions to this general rule, ". . .as when the extraneous crime forms a part of the res gestae; *or is one of a system of mutually dependent crimes;* or is evidence of guilty knowledge; or may bear upon the question of the identity of the accused, or articles connected with the offense; or is evidence of prior attempts by the accused to commit the same crime upon the victim of the offense for which he stands charged; or where it tends to prove malice, intent, motive, or the like, if such an element enters into the offense charged." *Cox v. State,* 165 Ga. 145 (139 SE 861) (1927); *Thomas v. State,* supra. (Emphasis supplied.)

In the instant case the trial court was made aware of appellant's involvement in the armed robbery from an incriminating statement referred to during a Jackson-Denno hearing. The appellant admitted the existence of a conspiracy to distribute illegal drugs. The state urged that it be allowed to go into the circumstances of the robbery as an act of an ongoing conspiracy which was part of a continuing scheme of dependent acts leading to the December 12th shooting.

Under the facts and circumstances in this case we find no error in the trial court's admission of such

evidence.

2. Appellant's second enumeration of error complains of the trial court's refusal to grant a motion to dismiss the indictment for lack of a speedy trial. Appellant argues that the fourteen month delay between his arrest and trial violated his Sixth Amendment right to a speedy trial under the test as set forth in Barker v. Wingo, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972) and *State v. Fields,* 137 Ga. App. 726 (224 SE2d 829) (1976).

"In speedy trial decisions, the court has emphasized that the denial of speedy trial may work to a defendant's advantage, and therefore there is no per se prejudice to a defendant from delay, nor is there any specific number of days or months within which he must be tried." *Harris v. Hopper,* 236 Ga. 389, 390 (224 SE2d 1) (1976). Factors to be considered are: (a) the length of the delay; (b) the reason for the delay; (c) the defendant's assertion of the right; and (d) the actual prejudice to the defendant. Barker v. Wingo, supra; *State v. Fields,* supra.

(a) Length of the delay. As a matter of law we do not find the fourteen month delay to have been too long. "The mere passage of time is not enough, without more, to constitute a denial of due process." *Hughes v. State,* 228 Ga. 593, 595 (187 SE2d 135) (1972); *Dansby v. State,* 140 Ga. App. 104, 105 (230 SE2d 64) (1976).

(b) Reason for the delay. The reasons offered by the state for the delay were to obtain police reports in the case and to apprehend other persons involved in the crime. These were legitimate reasons for delay. The appellant has failed to show a purposeful or oppressive delay by the state which would substantiate his claim. *Johnson v. Smith,* 227 Ga. 611 (1) (182 SE2d 101) (1971).

(c) Defendant's assertion of the right. Although the appellant filed a demand for jury trial, that demand was not filed until ten months following appellant's arrest. Appellant's trial was commenced within the prescribed term of court in compliance with his demand for jury trial.

(d) Prejudice to the defendant. Appellant contends that the fourteen month delay in trial impaired the testimony of the state's key witness, Randy Lee Knight, to appellant's detriment in that this witness could not

remember all that took place. An examination of this witness' testimony reveals that the witness' inability to remember certain sequences of events during the commission of the crime was not due to the length of time between the commission of the crime and trial, but rather to the rapid sequence of events at the time of the commission of the crime and resulting confusion. Therefore, we find no actual prejudice to the defendant as a result of the delay.

After weighing all factors, we conclude that the delay was not a denial of appellant's Sixth Amendment right to a speedy trial and, therefore, the trial court did not err in refusing to grant appellant's motion to dismiss the indictment on these grounds.

3. Appellant contends that the trial court erred in refusing to grant appellant's motion to dismiss the indictment for lack of a preliminary hearing.

In *State v. Middlebrooks,* 236 Ga. 52, 55 (222 SE2d 343) (1976), this court held, ". . .that a preliminary hearing is not a required step in a felony prosecution and that once an indictment is obtained there is no judicial oversight or review of the decision to prosecute because of any failure to hold a commitment hearing. . .[I]n no event will we overturn a conviction on direct appeal or on collateral attack because a commitment hearing was denied appellant."

Appellant's third enumeration of error is, therefore, without merit.

4. In his fourth enumeration of error the appellant contends that the trial court erred in allowing the state to use and refer to a statement made by appellant to police officers.

The trial judge conducted a Jackson-Denno hearing to determine whether appellant's statement was freely and voluntarily made. At that hearing a transcription of the tape recorded conversation between the appellant and two detectives was introduced into evidence. One of the detectives was called as a witness and testified that the appellant was advised of his Miranda rights and had voluntarily waived them by signing a "waiver of rights form." Following the appellant's testimony the trial court ruled that the statement was freely and voluntarily made,

and was, therefore, admissible. Appellant's statement was not introduced into evidence during the state's case in chief, however, it was used by the state in an attempt to impeach the appellant on cross examination.

In determining the voluntariness of an accused's statement, factual and credibility determinations made by the trial judge following a Jackson-Denno hearing must be accepted by an appellate court unless such determinations are clearly erroneous. *High v. State,* 233 Ga. 153 (210 SE2d 673) (1974); *Johnson v. State,* 233 Ga. 58 (209 SE2d 629) (1974); *Hurt v. State,* 239 Ga. 665 (2) (238 SE2d 542) (1977).

We have carefully reviewed the evidence submitted to the trial judge in this case and find that his determination was not clearly erroneous and, therefore, appellant's statement was properly admitted.

Notwithstanding, appellant argues that the trial court erred in failing to charge the jury concerning their consideration of the voluntariness of the appellant's statement. The appellant's statement was never introduced into the state's case in chief but was used by the state for impeachment purposes. The jury was fully charged as to impeachment and a charge on the question of voluntariness was not required.

Appellant's fourth enumeration of error is without merit.

5. Prior to trial, appellant filed a "Notice to Produce" pursuant to Code Ann. § 38-801 (g), requesting the state to produce at trial, inter alia, the following items: (a) the work product of the district attorney, (b) the address and telephone numbers of the state's witnesses, (c) an in-camera inspection of all reports, memoranda, and documents in the files of all law enforcement officers, and (d) the names and addresses of any other persons with knowledge of the facts.

Appellant contends that the above requested items were unlawfully withheld from his inspection by the trial court.

Code Ann. § 38-801 (g) provides that a party may "... compel production of books, writings or other documents or tangible things in the possession, custody or control of another party. . ." In *Brown v. State,* 238 Ga. 98, 101 (231

SE2d 65) (1976) this court held, for the first time, ". . .that pursuant to Code Ann. § 38-802, subsection (g) of Code Ann. § 38-801 is applicable in criminal cases." However, the court in *Brown,* supra, refused to decide which books, writings, documents or tangible objects were required to be produced by the state pursuant to a notice to produce.

It is not necessary to a decision in this case to rule upon what specific items are discoverable in a criminal case under Code Ann. § 38-801 (g). However, we do find that those items requested by appellant to be produced by the state are not the types of "books, writings or other documents or tangible things" that are subject to a "Notice to Produce."[1] The trial court did not err in failing to require the state to produce these items for appellant's inspection at trial.

*Judgment affirmed. All the Justices concur.*

ARGUED SEPTEMBER 19, 1978 — DECIDED OCTOBER 31, 1978 — REHEARING DENIED NOVEMBER 30, 1978.

*G. Terry Jackson,* for appellant.

*Andrew J. Ryan, III, District Attorney, Frederick Kramer, Assistant District Attorney, Arthur K. Bolton, Attorney General, Susan V. Boleyn, Assistant Attorney General,* for appellee.

---

[1]As to the production of a witness' written statement see *Stevens v. State,* 242 Ga. 34 (1978).