59473, 59474. PLEMONS v. THE STATE (two cases).

SHULMAN, Judge.

Defendant Larry Plemons was tried and found guilty of three counts of violating the Georgia Controlled Substances Act (Code Ann. Ch. 79A-8; Ga. L. 1974, p. 221): two counts of selling 3,4 Methylenedioxyamphetamine, and one count of selling marijuana. Co-defendant Sherry Plemons was charged with and found guilty of two violations of the Act: selling 3,4 Methylenedixoyamphetamine, and selling marijuana. We affirm the convictions on all counts.

1. The trial court instructed the jury as follows: "I instruct you that it is unlawful for any person to manufacture, deliver, distribute, dispense, administer, sell or possess with intent to distribute the Methylenedioxyamphetamine, a controlled substance. It is also called MDA. You heard a lot about MDA. MDA is referred to in these cases as 3,4 Methylenedioxyamphetamine, and they are one and the same."

Both defendants were charged with the illegal sale of 3,4 Methylenedioxyamphetamine, a Schedule I drug under Code Ann. § 79A-806. They contend that since they raised the issue at trial that the substance they had allegedly sold was an amphetamine (a Schedule II drug listed under Code Ann. § 79A-807), rather than 3,4 Methylenedioxyamphetamine as charged in the presentments, the trial court's instructions to the effect that 3,4 Methylene-dioxyamphetamine and Methylenedioxyamphetamine or MDA were identical constituted the expression of the court's opinion that the substance allegedly sold by defendants was necessarily the Schedule I drug, 3,4 Methylenedioxyamphetamine. We disagree with

appellants' assertions that the court's instructions implied that the substance defendants were accused of selling was necessarily 3,4 Methylenedioxyamphetamine, as alleged in the presentments, or that defendants could be found guilty as charged in the presentments even if the jury determined that the substance that defendants were accused of selling was not 3,4 Methylenedioxyamphetamine, but an amphetamine.

Contrary to appellants' contentions, the trial court did not express its opinion as to whether or not the chemical substance defendants were accused of selling was 3,4 Methylenedioxyamphetamine, but only that 3,4 Methylenedioxyamphetamine and MDA or Methylenedioxyamphetamine were the *same* chemical substance. Although this may have been erroneous (in view of expert testimony that the numerical preface "3,4" representing the positioning of oxygen molecules in the substance, differentiated the chemical from what would otherwise be considered an amphetamine), we fail to find that such instructions constituted the expression of an opinion as to the chemical composition of the drug.

In its instructions the trial court merely sought to inform the jury that 3,4 Methylenedioxyamphetamine, Methylenedioxyamphetamine and MDA were used interchangedly at trial in reference to the Schedule I drug defendants were accused of illegally selling.

Despite the fact that the trial court may have inadvertently or otherwise erroneously left out the numerals "3,4" we refuse to find harmful error. Indeed, the record shows that during the course of the trial, counsel for the defense, in reference to the substance 3,4 Methylenedioxyamphetamine, labeled it, on occasion, Methylenedioxyamphetamine or MDA, without the prefaced numerals.

Since we find that the trial court's instructions did not constitute the expression of an opinion, this enumeration of error does not present grounds for reversal.

2. A. We disagree with appellants' contentions that the trial court erred in denying the co-defendants' motion to sever their trials.

"[T]wo or more defendants charged with different offenses may be tried jointly where the offenses were part of a common scheme or plan." *Padgett v. State,* 239 Ga. 556, 559 (238 SE2d 92).

Co-defendants Larry and Sherry Plemons, husband and wife, were charged with selling the same substances (3,4 Methylenedioxyamphetamine and marijuana) to the same individuals from the same location over a period of six weeks (the last charged offense against Larry Plemons occurring approximately two weeks from the date of the offenses for which Sherry Plemons was charged). Under these facts, we refuse to find that the trial court abused its discretion in finding a common plan or scheme and thus denying

defendants' motions for separate trials. See, e.g., *Padgett*, supra.

B. Moreover, the fact that evidence presented at trial may have implicated defendants in the commission of offenses for which they were not currently on trial does not require a different result.

"On trial of a particular criminal offense evidence which shows that [a] defendant has committed another independent crime may not be admitted unless the two crimes are logically connected in point of time and so similar that proof of one tends to prove the other, i.e., where the extraneous crime tends to prove motive or intent or a course of conduct. [Cits.]" *Hopkins v. State,* 144 Ga. App. 663 (1) (242 SE2d 325). See also *Hampton v. State,* 238 Ga. 608, 609 (234 SE2d 521); *French v. State,* 237 Ga. 620, 624 (229 SE2d 410); and *Wilson v. State,* 145 Ga. App. 33 (5b) (243 SE2d 304), holding that evidence of *subsequent* crimes may also be admissible to show motive or course of conduct.

C. Even assuming the admissibility of evidence of independent crimes, appellants argue that the trial court's failure to charge on the limited purpose for which such evidence was admitted constitutes reversible error. Absent a request, the court's failure to charge on limited purpose does not constitute error. *Kimbrell v. State,* 57 Ga. App. 294 (4) (195 SE 460); *Suits v. State,* 150 Ga. App. 285 (3) (257 SE2d 306).

3. Defendants enumerate as error the rulings of the trial court denying their motions for mistrial, following a state witness' allegedly prejudicial references to the "undercover drug world" and "biker-type people." Since the court gave curative instructions immediately following the alleged improper testimony, after which defendants failed to either renew their motions or seek further rulings from the court, " 'the rulings thus complained of present no question for decision.' [Cits.]" *Burgess v. State,* 149 Ga. App. 630 (1) (255 SE2d 100).

If defendants were dissatisfied with the curative instructions, it was incumbent upon them to request further instructions or renew their motions for mistrial. Id.

4. Defendants assert error in the trial court's refusal to allow a witness for the state to testify as to a rumor he heard from an unknown source that the alleged confidential informant who had aided the Georgia Bureau of Investigation (GBI) in the arrest of defendants had been given money by the GBI to leave the state for his own protection. The court excluded such testimony on the grounds that it was inadmissible hearsay. We agree.

The defense sought to elicit the witness' testimony in regard to the rumor, not to impeach the witness (as the witness had stated on cross examination that from his own personal knowledge he was not

aware of any money being paid to the informant by the GBI), but to show the truth of the matter asserted therein (that is, that the confidential informant had indeed been paid by the GBI to leave the state).

Since the witness stated that he had no independent knowledge of a payment but that his knowledge was in the form of a rumor dependent upon information received from a third party, it constituted inadmissible hearsay. *Johnson v. State,* 130 Ga. App. 704 (4) (204 SE2d 302). See also *Thrash v. LaGrange Coach Co.,* 74 Ga. App. 81, 83 (38 SE2d 814).

5. Appellants assert error in the trial court's refusal either to dismiss the special presentments against defendants or to declare a mistrial or, in the alternative, to grant a continuance upon the state's alleged failure to furnish exculpatory evidence to appellants.

A. Appellants contend that it was incumbent upon the state, in response to appellants' Brady motion (Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215)) to produce information regarding a rumor circulating through the GBI that an alleged confidential informant (who had assisted in the arrests of defendants) was paid by the GBI to leave the state.

The state contended that it turned over all its information regarding such rumor. Indeed, upon defendants' motion and with the state's acquiescence, the trial court examined in camera the state's files on the cases, finding nothing of an exculpatory nature that had been improperly suppressed by the state.

"Although the state is obligated upon request to disclose material evidence in its possession favorable to the accused [cits.], the state cannot be required to disclose something which it does not know." *Lingerfelt v. State,* 147 Ga. App. 371 (9) (249 SE2d 100).

B. Appellants assert that even if information regarding the rumor was not suppressed by the state, it was incumbent upon the state to investigate the rumor in order to discover what might be exculpatory evidence.

"[T]he constitutional requirement of Brady is that the state produce exculpatory evidence *in its files,* not that the state affirmatively seek out exculpatory evidence, even though that evidence may be more accessible to the state than the defense." *Jackson v. State,* 145 Ga. App. 526 (1) (244 SE2d 49). Since there is no basis for a finding that information regarding payment to the confidential informant was in the state's files and actually withheld from the defense, there is no basis for the court to find a Brady violation. Id.

C. The trial court did not err in refusing to grant defendants' motions for a continuance for the purpose of investigating the rumor.

The grant or denial of a continuance is within the discretion of the trial court. See, e.g., *Bunge v. State,* 149 Ga. App. 712 (1A) (256 SE2d 23). Where, as here, the defense was informed of the rumor several months before trial, thus having had ample opportunity to investigate its veracity, we refuse to find that the trial court abused its discretion in denying defendants additional time to prepare for trial. See, e.g., *Campbell v. State,* 240 Ga. 352 (4) (240 SE2d 828).

6. A. We cannot agree with appellants' contention that the trial court's refusal to permit counsel for the defense to ask a state witness (an undercover agent for the GBI) the name of the hotel she had stayed in during her undercover work constituted an unwarranted limitation of defendants' right of cross examination. The court correctly determined that the particular name of the motel was not relevant to the establishment of the chronological sequence of events (as had been argued by counsel for the defense). That being true, the trial court did not abuse its discretion in narrowing the scope of defense cross examination. See, e.g., *Eades v. State,* 232 Ga. 735, 737 (208 SE2d 791).

B. We similarly find no merit in appellants' contentions that the trial court abused its discretion in refusing to allow the defense to question the GBI agent as to the color of the automobile used during the investigation since the defendants likewise failed to show that such information was in any way relevant to their defense. Id.

7. In the absence of a specific request, the trial court's failure to charge the whole of the statutes relating to the sale of marijuana and 3,4 Methylenedioxyamphetamine was not error. *Weatherington v. State,* 139 Ga. App. 795 (3) (229 SE2d 676).

8. The trial court properly refused to allow certain exhibits into evidence on the grounds that at the time they were proffered they were not relevant. In so ruling, the court informed counsel for the defense that a later showing of relevancy could render the documents admissible. Defendants nevertheless failed to reoffer the documents into evidence at a time when they may have been properly connected up with the testimony.

"A new trial will not be granted because of the exclusion of evidence apparently irrelevant and immaterial at the time it was offered, but which the testimony of a witness subsequently . . . showed to be relevant and material. When the materiality of the rejected evidence was made to appear by the testimony coming in subsequently, it should have been offered again." *Horton v. State,* 128 Ga. 26 (2) (57 SE 224).

Defendants' failure to again proffer the evidence precludes appellate consideration of the court's earlier exclusion of the evidence. *Horton,* supra, Divisions 1 and 2. See also *Prince v. State,*

180 Ga. 796 (180 SE 768); *Wright v. State,* 97 Ga. App. 653 (104 SE2d 158).

9. Appellants argue that the trial court erred in overruling appellants' motion for the records and files of the state to be sealed and included in the registry of the court for the purposes of appellate review.

Defendants moved, pursuant to Brady, that the court make an in camera inspection of the state's files and reveal to defendants all exculpatory, favorable or arguably favorable material.

Although the trial court furnished no exculpatory information to defendants (presumably because none was found), defendants claim that since at trial there was testimony that the files might well have contained "arguably favorable" information, the only meaningful way of obtaining review of the trial court's inspection is to have the state's files inserted into the record for appellate review. We agree that appellate review of the trial court's inspection is in order, and to the extent *Collins v. State,* 143 Ga. App. 583 (2) (239 SE2d 232), implies a contrary result, it is hereby overruled.

A. We herewith set forth the proper procedure for appellate review of in camera inspections of the state's files where defendant's counsel is not granted an opportunity to review the files: A photocopy of the files shall be prepared whereupon the original and the photocopy, together with a certificate by the prosecuting attorney that the entire case file is included, shall be transmitted to the trial judge, who shall make a determination that the photocopy is the same as the original and shall then return the original to the district attorney. After the trial judge has reviewed the files and made a determination, the files shall be sealed with the signature of the trial judge across the sealing portion. The trial judge shall also certify that the photocopy is a true, exact and complete copy of the original files as examined by such trial judge. The files shall then be made part of the record for review and shall be transmitted to this court. After review by the appellate court, the files shall be resealed and returned to the clerk of the trial court for transmission to the district attorney with the notation thereon that they shall not be opened without court order by anyone other than the district attorney or his designee.

The Supreme Court held in *Wilson v. State,* 246 Ga. 62, 65 (1980): "Once the material is sealed or inventoried by the trial court, the appellate court can, upon the defendant's showing cause, exercise its discretion and call for the examined material." In this court's view, the filing of an enumeration of error to review the in camera inspection shall constitute sufficient cause for this court to require that the procedure set forth above shall be followed.

B. Our review of the files in the case at bar (transmitted to this

court, pursuant to this court's order, with the trial judge's certificate) reveals no exculpatory information not otherwise revealed to defendants at trial pursuant to their Brady motion. Therefore, this enumeration of error does not present grounds for reversal.

10. We disagree with appellant Sherry Plemons' contentions that the trial court erred in failing to charge alibi, even without a request.

According to the testimony of the GBI undercover agents, Sherry Plemons met with the agents between 7:20 and 7:30 p.m., on May 6, 1979, for approximately 10 minutes, at which time the sale of the illegal drugs was allegedly made to the agents.

Contrary to appellants' contentions, the witnesses who testified that they left appellants' home at approximately 6:55 p.m. on the night in question did not establish an alibi defense for defendant Sherry Plemons. Their testimony, even if believed, would not reasonably exclude defendant's presence at the time and place the undercover agents testified the sale occurred.

Moreover, appellant Sherry Plemons' own testimony as to her whereabouts on the day in question was contradictory as to the time she left her house, how long she was gone, how far she traveled, and the length of time it took her to return. *Jones v. State,* 150 Ga. App. 645 (258 SE2d 297).

" 'It is well settled that where the evidence in support of the defense of alibi does not show the impossibility of the defendant's presence at the scene of the crime at the time of its commission, the failure of the court to charge the law of alibi, especially in the absence of a request for such a charge, is not error. [Cits.]' " *Parrott v. State,* 133 Ga. App. 931 (3) (213 SE2d 77); *Callahan v. State,* 147 Ga. App. 301 (248 SE2d 561).

Finding no grounds for reversal, we affirm the judgment of the trial court.

*Judgment affirmed. Deen, C. J., Quillian, P. J., Birdsong and Carley, JJ., concur. McMurray, P. J., Smith, Banke and Sognier, JJ., concur specially.*

ARGUED FEBRUARY 14, 1980 — DECIDED JULY 9, 1980 — REHEARINGS DENIED JULY 30, 1980 —

R. Stephen Tingle, William Ralph Hill, Jr., for appellants.
William M. Campbell, District Attorney, Christopher A. Townley, Assistant District Attorney, for appellee.

McMURRAY, Presiding Judge, concurring specially.

I concur fully in the judgment of affirmance in these cases but not necessarily with all that is said in the opinion and with particular reference to the majority's implications as to *Collins v. State,* 143 Ga. App. 583, 586 (2) (239 SE2d 232), and in overruling same. I also cannot concur in the language setting forth the so-called proper procedure instruction to trial courts as to how to handle Brady motions.

1. We are concerned here with a motion made pursuant to Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215), wherein a Maryland appellate court held that a prosecutor, in suppressing exculpatory evidence, denied the defendant due process of law. In that case, defendant's counsel had requested the prosecution to allow him to examine an extrajudicial statement made by a companion who had "admitted the actual killing" in that murder case.

The United States Supreme Court therein held, at p. 87 of its opinion, that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Numerous and voluminous appellate court decisions have since been written in attempts to follow the case law of Brady v. Maryland, 373 U. S. 83, supra.

In *Collins v. State,* 143 Ga. App. 583, 585 (2), supra, error was enumerated to the refusal of the trial court to order the district attorney to insert his file into the record of that case on appeal. However, the trial court did make an in camera inspection of the district attorney's file in an attempt to reveal all exculpatory favorable or "arguably favorable" material. As none was furnished to the defendant, counsel contended that at trial there was testimony in the file which might well have contained "arguably favorable" information, and "the only meaningful way of obtaining review of the trial court's inspection" was to have the district attorney's file inserted in the record. Based upon *Pass v. State,* 227 Ga. 730, 737 (12) (182 SE2d 779), this court held that since Brady does not require the prosecution to open its files for general inspection or for pretrial discovery and since there is no Georgia statute which would require such opening of the file for general inspection other than the decision of Brady, an in camera inspection appears to have been in compliance with the Supreme Court decision in Brady v. Maryland, supra, citing *Fleming v. State,* 236 Ga. 434, 438 (224 SE2d 15).

We are now concerned with the recent death penalty case of *Wilson v. State,* 246 Ga. 62, 65 (1980), wherein after an in camera inspection of the district attorney's file counsel was permitted to

examine exculpatory materials and then filed a notice to produce calling for production of certain documents examined at trial pursuant to Code Ann. §§ 38-801, 38-802 (Ga. L. 1966, pp. 502, 504; 1968, pp. 434, 435; 1968, p. 1200; 1978, pp. 925, 926).

Our Supreme Court then discussed the difference between our statutes as to notice to produce provisions and Brady v. Maryland, supra, citing its case of *Natson v. State,* 242 Ga. 618, 623 (5) (250 SE2d 420). Our Supreme Court again held that a notice to produce cannot be used in a criminal case "to require the production of the district attorney's work product; reports, memoranda and documents in the files of law enforcement officers; addresses and telephone numbers of the state's witnesses; or the names and addresses of other persons with knowledge of the facts." It was again held that "witness statements are not subject to notice to produce, although exculpatory witness statements are subject to disclosure under Brady v. Maryland, supra," citing *Stevens v. State,* 242 Ga. 34, 35-37 (1) (247 SE2d 838); *Hamby v. State,* 243 Ga. 339, 340 (2) (253 SE2d 759); *Spain v. State,* 243 Ga. 15, 17 (2) (252 SE2d 436) (1979).

In *Wilson v. State,* supra, our Supreme Court again approved the trial court in camera inspection method as to Brady motions. The following is then found: "On Motion by the defendant [Brady, or motion to seal and file — ?] the material examined in camera should either be sealed and filed, *Durham v. State,* 239 Ga. 697 (3b) (238 SE2d 334) (1977); or an inventory or record of the examined material made, so as to permit appellate review, *Dickey v. State,* 240 Ga. 634, 637, fn. 1 (242 SE2d 55) (1978)." It was then held that once the material is sealed or inventoried by the trial court, *"the appellate court can, upon the defendant's showing cause, exercise its discretion and call for the examined material."* (Emphasis supplied.) The Supreme Court in that case (*Wilson*) then exercised its discretion, called for and examined the material, in particular, statements alleged to have been exculpatory which were made available to the defendant, and since they were furnished to the defendant held that it was no longer the duty of the court "to determine if those statements were exculpatory." No reversible error was found as to the handling of the matter by the trial court, and the judgment was affirmed.

In *Collins v. State,* 143 Ga. App. 583, 586, supra, we did not have for review a motion by the defendant that the material examined in camera should be either sealed and filed or an inventory or record of the examined material made so as to permit appellate review. Consequently, our case of *Collins v. State,* supra, was not in conflict with the cases of *Durham v. State,* 239 Ga. 697 (3b), supra, and *Dickey v. State,* 240 Ga. 634, 637, fn. 1, supra. Hence, we are in nowise

required to overrule it although considerable water has flowed under the bridge in interpretation of Brady motions since the *Collins* case. I therefore do not agree to criticize it, and I disagree with the overruling of our earlier decisions which may become obsolete by reason of later decisions of the Supreme Court. I simply find no conflict between *Collins* and the recent decisions by the Supreme Court of Georgia.

2. I next call attention to our constitutional mandate as set forth in Art. VI, Sec. II, Par. VIII (Code Ann. § 2-3108) of the Constitution of Georgia of 1976, that our court is still one having jurisdiction "for the trial and correction of errors of law" only "in all cases in which such jurisdiction has not been conferred by this Constitution upon the Supreme Court, and in such other cases as may now or hereafter be prescribed by law." As such a court under the separation of powers doctrine we are not empowered with any rule-making duty, or to legislate in any form as to practice and procedure; although in a given case we may render direction to the trial court in carrying out our decision making duty in the correction of errors of law only. Under the doctrine of stare decisis it is our duty to follow the decisions of the Supreme Court of Georgia.

In the case sub judice the majority has simply attempted to set forth "the proper procedure for appellate review of in camera inspections of the state's files where defendant's counsel is not granted an opportunity to review the files." In my opinion, we are going beyond that set forth by the Supreme Court in *Wilson v. State,* supra. As stated above, in that case, following a Brady motion and an in camera inspection in which some material was made available to defense counsel, the Supreme Court stated: "On motion by the defendant the material examined in camera should either be sealed and filed . . . *or an inventory or record of the examined material made, so as to permit appellate review. . .*," and "*the appellate court can, upon the defendant's showing cause, exercise its discretion and call for the examined material.*" (Emphasis supplied.) The Supreme Court's decision left it where the appellate court can exercise its discretion and call for the examined material that has either been *sealed* or *inventoried* by the trial court. The trial court rightfully has been and should be left with some discretion as to whether to *seal* or merely to *inventory* the reviewed material for possible future review if the appellate court exercises its discretion and calls for the examined material. The majority here, in the case sub judice, goes much further and requires that the material be sealed and transmitted to this court, the exercise of discretion in calling for it notwithstanding. The majority also sets forth in detail as to how the trial court shall carry out these instructions which is far beyond that

required in *Wilson v. State,* supra, and in also holding that the filing of enumerations of error to review the in camera inspection "shall constitute sufficient cause for this court to require that the procedure set forth above shall be followed." I also do not agree that the filing of an enumeration of error as to the Brady motion would be "sufficient cause" requiring the exercise of our discretion in calling for the examined material.

I simply cannot agree to such direction by this court which goes much further than that required by the Supreme Court in *Wilson v. State,* supra, inasmuch as I do not believe we have any such authority in directing the trial court as to the handling of Brady motions.

I am authorized to state that Judge Smith and Judge Banke join in this special concurrence.

SOGNIER, Judge, concurring specially.

I specially concur in the judgment of the majority affirming these cases. I concur also in the overruling of *Collins v. State,* 143 Ga. App. 583, 586 (2) (239 SE2d 232) (1977).

I agree with Division 2 of Judge McMurray's special concurrence and join him therein.