## 60467. BARNES v. THE STATE.

BIRDSONG, Judge.
Appellant was convicted of voluntary manslaughter in the death of his wife. Appellant and Jane Barnes were in the process of getting a divorce. On Friday, September 1, 1978, appellant went to Mrs. Barnes' house to pick up the couple's two boys for their usual weekend visitation. When the couple got into an argument about a truck repair bill, Mrs. Barnes allegedly pointed a gun at the appellant. Appellant left, but on Monday when he returned from work he thought his trailer and shed had been broken into, and suspected his wife. Appellant went to her house and was invited to come in. Appellant testified he heard Mrs. Barnes say to one of her daughters: "Go get my gun . . . I'll kill him." Appellant returned to his truck, got his pistol and returned to the house. The victim was sitting on the couch with her left hand behind her back. Appellant thought she had a gun behind her back, and testified that he saw a gun. He testified that she leaned over to the left and pulled her hand out, and at that moment he shot her. Other testimony showed that when appellant came in, Mrs. Barnes told her daughter to call the police, that an argument erupted wherein the victim was slapped and knocked down on the sofa, and wherein finally the appellant took his gun from his pocket and shot Mrs. Barnes. She was shot at least five

times at close range. *Held:*

1. During the trial of the case the state showed that five years earlier appellant had plead guilty to simple assault. Appellant contends this evidence was inadmissible under Code Ann. § 38-202, as putting defendant's character and conduct in other transactions in issue; that proof of the separate offense was inadmissible because there was no logical connection between the two incidents; and proof of the earlier offense was too remote in time to show motive, intent or plan, and did not tend to prove the latter crime. *Thomas v. State,* 239 Ga. 734 (238 SE2d 888); *Campbell v. State,* 234 Ga. 130 (214 SE2d 656).

The appellant is incorrect in his contentions. We reached a seemingly contrary result in *Brown v. State,* 109 Ga. App. 212, 215 (135 SE2d 480), where we thoroughly discussed the question of the admissibility of evidence of prior difficulties, but in that case and most of the cases it cites, the evidence of the previous act shed no light upon the truth of the offense in question and shared no relevance with it, so the telling of it caused more harm than good. But in *Shaw v. State,* 60 Ga. 246, 250, the Supreme Court approved the admission of evidence that the defendant had beat his wife four years before he finally killed her, because this evidence showed that the state of feeling between husband and wife was never good, and it would be more likely that they would be quarreling than would others between whom good feelings had always existed. In *June v. State,* 213 Ga. 311 (99 SE2d 70), evidence of an incident three years earlier where the defendant had threatened the deceased, was held admissible because of the relevance of the incident in showing bad feeling. And in *Starke v. State,* 81 Ga. 593 (7 SE 807), it was held that it was not error to admit evidence of a previous difficulty between accused and deceased, because it went to illustrate the state of feeling between accused and deceased and to show that, on an occasion different in time from the killing, the accused had drawn his gun on the deceased. The evidence was admissible even though it was also shown the two parties were perfectly friendly after this prior difficulty. The subject was most recently taken up in *Milton v. State,* 245 Ga. 20, 26 (262 SE2d 789) when it was held that the length of time intervening (between the prior difficulty and the present offense) is material only as affecting the *credibility* and *weight* to be given such evidence.

We are convinced from our study of the cases that evidence of prior difficulties between the victim and the defendant ought to be received carefully, and if there is no probative connection between the two, or the prejudice arising from the evidence far outweighs what probative value it may have, it ought not be admitted. See *Hicks v. State,* 232 Ga. 393, 397 (207 SE2d 30). But if there is any relevance, or

in cases of doubt, *Milton,* supra, the jury ought to hear it, and determine for itself the weight and credibility the evidence will be given. In the case before us the evidence that five years earlier the appellant had plead guilty to simple assault, apparently committed against his wife, was highly relevant and illuminative. The appellant had just at length told of several occasions when his wife had threatened or attempted bodily harm against him. In describing the fear and nervousness his wife created in him, which he contended eventually resulted in her own death, he implied that his own conduct towards her had been blameless and stated he never laid hands on her. This was clearly a killing that arose from a long, turgid relationship, and in casting on the deceased all blame for violence in the relationship, appellant made relevant the evidence of which he now complains. The jury was entitled to hear it and determine its weight and credibility (*Milton,* supra).

2. In his second enumeration of error, appellant contends the trial court erred in failing to make a record of the in camera inspection of the state's files. The appellant made both general and specific Brady requests. (See *Chafin v. State,* 246 Ga. 709, 715 (6) (273 SE2d 147).) Following an examination of the files, upon which the trial court found nothing even "slightly, remotely beneficial," appellant requested that the state's file and the investigators' file be made a part of the record for appellate review. His argument on appeal is that the Supreme Court held in *Wilson v. State,* 246 Ga. 62, 65 (268 SE2d 895) that on defendant's motion the material examined in camera should either be sealed and filed, or an inventory or record of the examined material made, so as to permit appellate review. Appellant's contention is that since no record of the state's file was made, he "has absolutely nothing at his disposal with which to mount his appeal" of the trial court's failure on in camera inspection to produce exculpatory material. Appellant concludes that he "has a right, but no remedy."

The short answer to the appellant's contentions is the same one we made in *Collins v. State,* 143 Ga. App. 583, 586 (239 SE2d 232). In *Collins,* the defendant claimed there was testimony that the files might well have contained "arguably favorable" information, and that the only meaningful way of obtaining appellate review of the trial court's inspection is to have the state's file inserted in the record. *Collins,* supra, held that the trial court's examination complied with the requirements of Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215); and the burden was on the defendant to show how his case was materially prejudiced by the lack of access to the state's file.

However, a similar argument was made in *Plemons v. State,* 155

Ga. App. 447, 452 (270 SE2d 836) and in that case, we overruled *Collins'* holding in Division 2. The *Plemons* defendants claimed, as did *Collins,* that "since at trial there was testimony that the files might well have contained 'arguably favorable' information, the only meaningful way of obtaining review of the trial court's inspection is to have the state's files inserted into the record for appellate review." *Plemons* agreed with this proposition. *Plemons* expanded on *Wilson,* supra, to "set forth the proper procedure for appellate review" of in camera inspections, which procedure requires the trial court to photocopy, seal and certify the files, then make them part of the appellate record and transfer the same to the appellate court for review. We pointed out that *Wilson,* supra, held: "Once the material is sealed or inventoried by the trial court, the appellate court can, *upon the defendant's showing cause,* exercise its discretion and call for the examined material" (emphasis supplied).

*Plemons* concluded that "the filing of an enumeration of error to review the in camera inspection shall constitute sufficient cause for this court to require that the procedure set forth above shall be followed." The decision obviously implies that the filing of an enumeration of error would constitute sufficient cause for this court to review the in camera inspection.

On reconsideration of *Plemons,* we have determined that our decision therein was error and that our earlier decision in *Collins,* supra, is correct. The argument that there can be no meaningful way of obtaining review of in camera inspections wherein the trial court fails to find exculpatory evidence, unless the state's file is inserted in the record stems from the classic concern, which has plagued the Brady principle from its advent, that a defendant's Brady rights may be denied by the trial court, and are unprotected on appeal, because he cannot ask for what he does not know exists.

This classic concern, which is the villain in *Plemons,* was noted as part of the congenital problem, but not directly addressed, in United States v. Agurs, 427 U. S. 97, 101, fn. 4 (96 SC 2392, 49 LE2d 342); and see Comment, Brady v. Maryland and the Prosecutor's Duty to Disclose, 40 U. Chi. L. Rev. 112, 116-117, 130-131 (1972). In Agurs, the Supreme Court saw the argument as one which merely questions the state's duty to disclose exculpatory information where no request, or only a general Brady request, is made. By inference, then, the concern that the defendant cannot ask for what he does not know exists is disposed of by the Agurs decision that where only a general request for Brady material is made (which is treated the same as if no request is made) this merely reaffirms the state's already existing constitutional obligation to produce exculpatory material. If that proposition answers the classic concern, then the appellant has

no redress unless he can show that the state and the trial court failed in their respective duties under this constitutional obligation by actually suppressing materially exculpatory evidence. Agurs, supra, did not hesitate to place the burden upon the defendant to show what the suppressed evidence was, and how it is material.

Brady violations arise with "the discovery, after trial, of information which had been known to the prosecution but unknown to the defense" (Agurs, supra, p. 103), or the trial court's failure to order disclosure of materially exculpatory evidence. Neither Brady nor Agurs, which specifically addressed the question, recognized a right in a defendant to complete discovery of the state's files; to the contrary, the state is under no constitutional or procedural obligation to allow unrestricted discovery. Agurs, supra, p. 109; and see *Payne v. State,* 233 Ga. 294, 297 (210 SE2d 775); *Collins,* supra, p. 586. Despite the defendant's ignorance of what is in the state's file, his right to exculpatory evidence is met by the duty on the state, with or without request, to produce it. Agurs, supra, generally.

There is no logical basis to presume that the prosecutor (nor, especially, the trial judge upon an in camera inspection) has failed to do his duty and has suppressed materially exculpatory evidence merely because nothing has been produced. In *Payne,* supra, it was held that "the conduct of an in camera inspection, and the trial court's ruling that there was nothing in the file favorable to the accused, *satisfies the requirement of Brady"* (emphasis supplied). In *Durham v. State,* 239 Ga. 697, 700 (238 SE2d 334), the court said: "The trial judge's discretionary ruling on the lack of exculpatory matter in the prosecution's files establish[es] that as a fact absent a counter-showing." In *Dickey v. State,* 240 Ga. 634, 637, fn. 1 (242 SE2d 55), our Supreme Court noted that the U. S. Supreme Court has recognized that, "at a minimum, the fact of suppression must be shown" on appeal. Indeed, inasmuch as Brady and Agurs require an appellant to show the *materiality* of *suppressed* evidence in order to prove constitutional error, it cannot reasonably be said that he has grounds to appeal at all if he cannot show that what was suppressed was material. And inasmuch as Brady violations involve the discovery, after trial (or during trial) of suppressed material (Agurs, supra, p. 103), or the trial court's failure to order disclosure of materially exculpatory evidence, if the appellant, post trial, can point to nothing materially exculpatory which was suppressed, he has no right under the Brady principle.

In addition to discussing the question of suppression, the U. S. Supreme Court in Agurs, supra, specifically addressed the question of what constitutes the "materiality" of evidence in Brady-type cases. This question had been "the most difficult problem created by

the Brady decision." Comment, 40 U. Chi. L. Rev., supra, p. 125. Its uncertainty led courts to resort to all manner of standards by which they might determine whether constitutional error had been committed by the suppression of exculpatory evidence. Various phrases have been used, such as whether the defendant was "denied a fair trial" (*Durham,* supra); whether the defendant's case had been "materially prejudiced" (*Hicks,* supra; *Collins,* supra); and whether the jury "might have returned a different verdict if the evidence had been received" (United States v. Agurs, 167 U. S. App. D. C. 28, 510 F2d 1249). See especially United States v. Agurs, 427 U. S. 97, supra, fn. 20-22; and United States v. Keogh, 391 F2d 138.

Agurs makes it plain, however, that both in the trial court and in the appellate courts, the defendant, to show error in the refusal of the state to disclose evidence or the refusal of the courts to order the disclosure of evidence, must show that the exculpatory evidence was actually suppressed and was material. Of necessity this requires a showing of what the evidence is and how it is material.

What, then, is the standard of materiality that must be shown to create an appealable issue? Agurs holds that in the case which involves perjured evidence a very low standard of materiality is required; the Agurs court indicated that such suppression is probably constitutional error per se, because such instances involve "a corruption of the truth seeking function of the trial process." (Agurs, supra, p. 104). Where a specific request is made, Agurs indicates that the standard of materiality is whether the suppressed evidence "might have affected the outcome of the trial"; see especially *Dickey v. State,* supra, p. 636. A specific request puts the state on notice that the defense is interested in certain information and the failure to make any response is "seldom if ever excusable." (In the case of a specific request, where defendant can reasonably claim materiality, the prosecution must respond either by furnishing the material or by submitting the problem to the trial court for an in camera inspection.) The Supreme Court specifically said: "The test of materiality in a case like *Brady* in which specific information has been requested by the defense is not necessarily the same as in a case in which no such request has been made." (Agurs, supra, pp. 104-106.)

Therefore, we conclude that Agurs clearly indicates the standard of materiality of suppressed evidence which was specifically requested is whether such evidence might have affected the outcome of the trial (Agurs, supra, p. 104); and Agurs held that the standard of materiality of suppressed evidence for which only a general Brady request, or no request, is made, is generally different (Agurs, supra, p. 106) and is higher in requiring a showing that the evidence "creates a

reasonable doubt that did not otherwise exist." (Agurs, supra, p. 112.)[1]

Based on the foregoing, we conclude we erred in *Plemons* wherein we held that the mere filing of an enumeration of error to review the in camera inspection shall constitute sufficient cause for this court to require that the trial court send up either the state's entire file or the documents which, following its in camera inspection, the trial court photocopied, sealed and certified as constituting that portion of the state's file inspected by the trial court.

Even in *Wilson,* supra, which is the source of the directive that the examined materials be sealed and filed for appellate review, there appeared to be no real evidentiary justification by the appellant to warrant the review of the state's files, since the only evidence which was materially exculpatory obviously was not suppressed. However, we see nothing onerous in requiring the trial court, as directed by *Wilson,* supra, to seal *examined* material and file it for appellate review, in case the defendant is ultimately able to claim and show a substantial basis for arguing, the materiality of particular suppressed evidence on appeal. Therefore, we will adhere to the procedural instructions set forth in *Plemons* for the protection of material contained in the prosecution's file which has been examined by the trial court. However, we see no reason to require the forwarding of the prosecutor's entire file (even though it may have been examined, certified and sealed in accordance with the procedure we set up in *Plemons*) since we will not call up the state's files for review unless the appellant can show cause, by showing that particular evidence was suppressed which was material. *Wilson,* supra.

That is the law in any case, but we must add, to paraphrase Voltaire on the existence of God, that if it were not so we would be compelled to invent it. If this court deemed itself obliged to review in camera inspections merely because the trial court found nothing exculpatory or held to be immaterial what the appellant cannot make a substantial claim is material, then in every criminal case we would be forced to perform de novo in camera inspections. The state's entire file or at least the examined material would have to be reviewed by

---

[1] We must note here that Agurs specifically holds that the standard of materiality to be used by the trial judge in determining whether material exculpatory evidence has been suppressed (either, we think, when deciding whether he must perform an in camera inspection, or when refusing such evidence after examining it and then analyzing its significance again in the context of the full trial, which is the better method of determining materiality; see p. 113) *is the same as that which applies on appeal,* since absent a constitutional violation there is no breach of the prosecutor's constitutional duty to disclose (p. 108).

this court afresh in every criminal trial. It is conceivable that mountains of reports and data would have to be studied, perchance to find some scrap of evidence which the trial court has already said does not exist and which we would have no reason to believe does exist; or material examined in camera would have to be analyzed anew to find some material exculpation which the trial court has said is not there and for which the appellant cannot marshall an argument otherwise.

We will not assume such a burden. This court is not a trial court and not a factfinder. The Court of Appeals is a court for the correction of errors below; it is not a court of original jurisdiction. Georgia Constitution, Art. VI, Sec. II, Par. VII (Code Ann. § 2-3108); see *Diamond v. Chatham County Bd. of Tax Assessors,* 135 Ga. App. 645, 646 (218 SE2d 657). If the possibility that materially exculpatory evidence was suppressed is so strong, the defendant ought at least be able to name it and describe how it is material. Otherwise he has no right, under Brady or otherwise, to ask this court to fish amongst the files and substitute its judgment for that of the trial court. *Dickey,* supra, p. 636; *Durham,* supra, p. 700; *Payne,* supra, pp. 296-297; *Collins,* supra, pp. 585-586.

In the case sub judice, although it appears that appellant Barnes had made both specific and general Brady requests, he makes no specific claim that any particular exculpatory evidence was in fact suppressed, and of course cannot show that it was material according to either Agurs' standard. Therefore he has no grounds to appeal the trial court's review of the state's file, much less to ask this court to call up the file and examine it, and the trial court's failure to make a record of its in camera inspection is, at the very least, harmless.

*Judgment affirmed. Deen, P. J., Banke, Sognier and Pope, JJ., concur. McMurray, P. J., concurs in the majority opinion and judgment and also concurs specially. Quillian, C. J., Shulman, P. J., and Carley, J., dissent.*

DECIDED JANUARY 6, 1981.

*Kenneth J. Vanderhoff, Jr.,* for appellant.
*Frank C. Mills III, District Attorney, Rafe Banks III, Assistant District Attorney,* for appellee.

McMURRAY, Presiding Judge, concurring specially.

I concur fully in the judgment of affirmance and in all that is said in the majority opinion. In addition, I refer to and adopt all that is said in my special concurrence in *Plemons v. State,* 155 Ga. App. 447, 454, supra, joined in by Judge (now Justice) Smith, Judge Banke, and

in part by Judge Sognier, who also specially concurred.

SHULMAN, Presiding Judge, dissenting.

Because I believe the majority's holding in Division 2 amounts to an abdication of this court's appellate responsibility, a responsibility belatedly shouldered in *Plemons v. State,* 155 Ga. App. 447 (270 SE2d 836), I must dissent. The majority opinion reflects the widespread confusion between compliance with constitutional mandates and the mechanics for securing such compliance. Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 214), requires that exculpatory evidence in the hands of the prosecution be disclosed to criminal defendants. From that requirement have grown "Brady motions" and a procedure at the trial level, i.e., the in camera inspection by the trial judge of the prosecution's file, for determining whether there has been compliance with the disclosure requirement. *Collins v. State,* 143 Ga. App. 583 (2) (239 SE2d 232), without clearly so holding, implied that performance of the mechanics established to monitor compliance with Brady constituted such compliance and no appellate review was necessary. It was to eliminate that confusion between procedure and substance that we overruled *Collins* in *Plemons.* I believe we were right in so ruling and that we cannot now turn back from this obligation.

The majority correctly states the problem: ". . . a defendant's Brady rights may be denied by the trial court and are unprotected on appeal, because he cannot ask for what he does not know exists." At bottom, that is a matter not of law but of policy. The policy question is whether, in this particular context, appellate courts will review a trial court's decision. We must ask ourselves, as did Juvenal, "But who is to guard the guards themselves?" Every other decision of a trial judge in a criminal case is subject to review. For every other decision of a trial court in a criminal case, there is a record made, or an opportunity exists for the defendant to cause a record to be made. Now the Supreme Court in *Wilson v. State,* 246 Ga. 62 (1) (268 SE2d 895), has clearly required that a record be made when an in camera inspection of the prosecution's file has been conducted. The expressed purpose of that requirement was to make possible appellate review when appropriate.

In *Plemons,* building on *Wilson,* we decided that review would be proper whenever an appellant enumerated as error the trial court's decision that there was no exculpatory material in the file. That decision was not lightly reached. Nor was it considered inherently desirable to create the potential for the administrative burden the majority in this case fears. Such fears are justified. But, a policy decision was made that the right of an appellant in a criminal case to

have an appellate review of a trial court's decision outweighs the countervailing consideration of judicial economy. I adhere to that position.

Insisting that a trial court's judgment be subject to review is not equivalent, as the majority implies it is, to presuming the failure of the prosecutor and the trial judge in their respective duties. The fact that a trial judge's decision in a motion to suppress is subject to review on the record does not reflect a presumption that all evidence is illegally seized. It is imperative that we view the issue here clearly and not cloud it with issues of good faith vs. bad faith and substantive standards of review. The question before us is whether we will review a trial court's decision, a decision based on a record to which defense counsel has not had access, without requiring that counsel to first demonstrate the existence of error.

To perform that review does not transform this court into a fact-finder. A review of a trial court's decision is perfectly consistent with this court's constitutional role, the correction of errors of law. We would no more be improperly substituting our judgment for that of the trial court in this context than we are in the course of making any other review on the record built below of a trial court's application of law to facts.

I must emphasize again that this case involves only the question of whether an appellant shall have, *as a matter of right,* a review of a particular judgment of a trial court. The majority correctly analyzes the standard for determining whether there has been, in the Brady context, constitutional error: there must have been a suppression of material evidence. But the majority then holds that the record below will not be called up for review ". . . unless an appellant can show cause, by showing that particular evidence was suppressed which was material." I cannot accept as proper or fair a procedure which requires that, as a prerequisite to appellate review of the record below, an appellant demonstrate constitutional error without access to the record on which the allegedly erroneous decision was based. There are, of course, sound policy reasons for denying criminal defendants free access to the prosecution's file, either before, during or after trial. I do not, however, believe there are any valid reasons for cutting off appellate review of a decision made by the trial judge.

The appellant in this case enumerated as error the refusal of the trial court to make a record on which review could be had. I believe the trial court's failure is contrary to the express direction of the Supreme Court in *Wilson* that such a record be made and thwarts the right of review for which we established a procedure in *Plemons.* For those reasons, I would vacate the judgment of the trial court and remand this case with direction that the trial judge prepare a record

of his in camera inspection in accordance with the procedure established in *Plemons.* Assuming that such a record could be prepared by the trial court, a new judgment could be entered on the jury's verdict, whereupon appellant would be free to file a new appeal. If, however, the trial court should be unable to certify to this court a record of its inspection of the state's file, appellant's conviction would have to stand reversed.

I am authorized to state that Chief Judge Quillian and Judge Carley join in this dissent.