## S98A0010. MULLINS v. THE STATE.

### (496 SE2d 252)

BENHAM, Chief Justice.

Thomas Eugene Welch's body was found along Price Creek Road in Pickens County, Georgia, on April 7, 1996. Nothing was found in the pockets of the 67-year-old victim's clothing, and no jewelry was found on the body. He had last been seen alive on April 5, in the company of appellant Joe Lee Mullins, who had placed the intoxicated Welch in the backseat of Mullins' car. Witnesses reported that the victim, described as a "street person" with an alcohol problem, owned a watch and knife and had cashed a government benefits check shortly before he was last seen. An autopsy revealed that he had been stabbed multiple times on his neck and head and had bled to death from his wounds.[1] Investigators found 14 cigarette filters "pinched off" from the tobacco-laden portion of the cigarettes at the site where the victim's body was discovered. A search of appellant's car revealed 15 cigarette filters consistent in appearance with those found at the crime scene, as well as local newspapers reporting the victim's death. Ten more "pinched" cigarette butts were found at appellant's home, and a witness testified that appellant smoked cigarettes after pinching off the filters. A pocketknife identified as looking like the one which belonged to the victim was found in appellant's possession. A GBI microanalyst testified that an unusual impression on the victim's left wrist could have been made by a watch recovered from appellant's former wife who testified that appellant had given her the watch shortly after the victim was last seen alive. The State also presented extrinsic crime evidence, consisting of appellant's 1980 conviction for voluntary manslaughter in Gilmer County in connection with the death of an "alcoholic street person" whose body had been found off Price Creek Road just north of the Pickens/Gilmer county line.

1. The evidence was sufficient to authorize a rational trier of fact to find appellant guilty of malice murder and armed robbery beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). A conviction based on circumstantial evidence is authorized when every reasonable inference and hypothesis except that of guilt is excluded by the evidence. *Brown v. State*, 260 Ga. 153

---

[1] The crime occurred in early April 1996, the victim having last been seen alive on April 5 and his body found on April 7. Appellant was arrested on April 16, and the grand jury returned an indictment charging him with malice murder, felony murder, and armed robbery on June 10. Appellant's trial commenced on September 23, 1996, and concluded with the jury's return of guilty verdicts on September 27. Appellant was sentenced to life imprisonment on October 1, and his motion for new trial, filed on October 9, was denied on February 20, 1997. The notice of appeal was filed February 21, and the case was docketed in this Court on September 17, 1997. It was submitted for decision on briefs.

(1) (391 SE2d 108) (1990). When the evidence presented by the State is viewed in the light most favorable to the jury's verdict, the jury could have found that every reasonable hypothesis except the guilt of appellant was excluded. Id.

2. Appellant next contends that the trial court erred when it admitted evidence of appellant's Gilmer County voluntary manslaughter conviction. Appellant maintains that the extrinsic crime was not similar to the crime for which appellant was being tried, and that the 17-year lapse in time between the Gilmer County incident and the death of the Pickens County victim made the extrinsic crime too remote in time to be admissible pursuant to Rule 31.3 of the Uniform Superior Court Rules. See also *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991). The trial court ruled the Gilmer County conviction admissible after finding it "substantially relevant for the purpose of showing the course of conduct and bent of mind of the Defendant."

"The test of admissibility of evidence of other criminal acts by the defendant is not the number of similarities between the two incidents. Rather, such evidence 'may be admitted if it is substantially relevant for some purpose other than to show a probability that the defendant committed the crime on trial because he is a man of criminal character. . . .' [Cit.]" *Maggard v. State*, 259 Ga. 291 (2) (380 SE2d 259) (1989). After reviewing the record, we cannot say that the trial court was clearly erroneous when it ruled that the Gilmer County crime was sufficiently similar to the crime being tried to authorize the admission of evidence of the former in the trial of the latter. *Stephens v. State*, 261 Ga. 467, 469, n. 2 (405 SE2d 483) (1991). As for the lapse in time between the extrinsic crime and the crime for which appellant was being tried, while the passage of time is one of the more important factors to weigh in considering the admissibility of the evidence in question, it is not wholly determinative. *Campbell v. State*, 234 Ga. 130, 132 (214 SE2d 656) (1975). See also *Gilstrap v. State*, 261 Ga. 798, 800 (410 SE2d 423) (1991) (Benham, J., concurring). The seventeen-year lapse in this case is mitigated somewhat by the fact that appellant was incarcerated for eight of those years. *Harden v. State*, 211 Ga. App. 1 (1) (438 SE2d 136) (1993).

3. Several times during the trial, the trial court interposed questions to the testifying witness. Appellant argues that the trial court's inquiries amounted to an abuse of discretion and violated the statutory prohibition, embodied in OCGA § 17-8-57, against the trial court's expression or intimation of its "opinion as to what has or has not been proved or as to the guilt of the accused."[2] It has long been

---

[2] Appellant also contends the trial court's questioning violated OCGA § 9-10-7, the civil

part of Georgia jurisprudence that a trial judge may propound questions to any witness for the purpose of developing fully the truth of the case, and the extent of such an examination is a matter for the trial court's discretion. *Marcus v. State,* 149 Ga. 209 (6) (99 SE 614) (1919). The trial court's examination of a witness called by either side is not cause for a new trial unless the court, during its examination of the witness, expresses or intimates an opinion on the facts of the case or as to what has or has not been proved, or the questioning becomes argumentative. *Wilson v. State,* 229 Ga. 224 (2) (190 SE2d 78) (1972). After examining each of the 42 exchanges cited by appellant as an instance when the trial judge allegedly improperly questioned a witness, we find no expression or intimation of opinion by the trial court and conclude that appellant's enumeration of error is without merit.

4. Finally, appellant asserts that the assistant district attorney should have been rebuked and the jury given a curative instruction after the ADA made an improper statement during his examination of appellant's former wife.[3] See OCGA § 17-8-75. "Where the objection to the prejudicial matter is sustained, . . . the court has no duty to rebuke counsel or give curative instructions unless specifically requested by the defendant. [Cits.]" *Woodham v. State,* 263 Ga. 580 (1) (a) (439 SE2d 471) (1993). In the absence of a defense motion for the trial court to take further action, the trial court did not err in failing to rebuke counsel or give curative instructions. Id.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 2, 1998.

*Richard Thurman,* for appellant.

*Roger G. Queen, District Attorney, William B. Britt, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Allison B. Goldberg, Assistant Attorney General,* for appellee.

---

procedure section counterpart to OCGA § 17-8-57. Since the error alleged by appellant to have occurred took place in a criminal proceeding, OCGA § 9-10-7 is not applicable.

[3] The prosecuting attorney elicited from the woman that the marriage lasted eight years. The year the marriage ended coincided with the time appellant was incarcerated for the Gilmer County homicide mentioned in Division 2, supra, a fact not then known to the jury. When the ADA asked the witness if there was a reason the marriage terminated, he was told by the trial court to "get to it some other way." He then asked the woman, "When did you next see him after that whole lot of time I'm not allowed to talk about passed away?" In response to appellant's objection, the trial court told the ADA his comment was improper.