S98A0686. BAGWELL v. THE STATE.
(508 SE2d 385)

HINES, Justice.

A jury found Janet Hardin Bagwell guilty of malice murder and of possession of a firearm during the commission of murder in connection with the fatal shooting of her husband, Ronald Bagwell.[1] Ms. Bagwell appeals from her convictions and from the denial of her motion for new trial as amended, claiming insufficiency of the evidence and numerous instances of ineffective assistance of trial counsel. The claims are without merit, and we affirm.

The evidence construed in favor of the verdicts showed the following. At approximately 11:22 p.m. on August 11, 1994, the Floyd

---

[1] Ronald Bagwell was shot on August 11, 1994. On February 13, 1995, a Floyd County grand jury indicted Janet Hardin Bagwell for malice murder and for possession of a firearm during the commission of murder. A trial was held in May 1997, but the jury was unable to reach a verdict and an order of mistrial was entered on May 23, 1997. A second trial resulted in the jury returning a verdict of guilty on both charges on September 11, 1997. On that day, Bagwell was sentenced to life imprisonment for the malice murder and a consecutive five years incarceration for the firearm possession. Bagwell's motion for new trial was filed on October 8, 1997, amended on November 18, 1997, and denied on December 18, 1997. The notice of appeal was filed on January 15, 1998, and the appeal was docketed in this Court on January 27, 1998. The case was orally argued on April 14, 1998.

County police were dispatched to the Bagwell residence in response to a 911 hang-up call. A police officer arrived about 11:35 p.m and knocked on the door but got no answer. The officer saw a person, later determined to be Ms. Bagwell, peering through the blinds. While the officer was still at the door, Ms. Bagwell's friend, Griffin, appeared and told the officer that she had heard shots from inside the trailer. The officer entered the trailer and found Ronald Bagwell slumped over in a chair and blood covering his head. Mr. Bagwell had sustained three .22 caliber gunshot wounds to the head. Ms. Bagwell then entered the room from another part of the trailer. She was wiping her hands with a towel and told the officer that she had heard shots. Ms. Bagwell appeared calm, almost detached. Mr. Bagwell was taken to the hospital and died the following day as the result of his head wounds. Ms. Bagwell failed to display any emotion while her husband was in the hospital, and she did not ask to see him.

Ms. Bagwell told the police and relatives several inconsistent versions about what happened. The consistent portions of Ms. Bagwell's story were that she and Griffin went out to dinner the night of August 11. Mr. Bagwell was visiting his relatives and was not home when the pair left. After dinner Ms. Bagwell and Griffin discussed going shopping but stopped at the Bagwell residence to tell Mr. Bagwell of their plans. From this point forward Ms. Bagwell related various versions of events. However, at trial she testified that after returning from dinner, and with Griffin still in her car outside the Bagwell residence, she walked into the trailer and found Mr. Bagwell dozing in his club chair. She answered a telephone call from her father, and then walked outside to talk with Griffin. As she started walking back to the trailer, she saw a shadowy figure in the trailer and heard three "loud pops."

The police did not find a weapon in or outside the Bagwell residence, nor did they find any evidence of forced entry. Witnesses testified that Ronald Bagwell had been in possession of a small handgun like a .22 caliber or a .32 caliber, and that he had displayed the weapon in front of his wife.

The State also presented evidence that Ronald Bagwell was an insurance agent and carried coverage on his own life with a possible payout of $140,000. Janet Bagwell was the beneficiary of the life insurance policies, and she attempted to claim the proceeds approximately a month after her husband's death.

1. To be successful with her claims of ineffectiveness of trial counsel, Bagwell must demonstrate that her attorney's performance was deficient and that the deficiency prejudiced her defense. She must overcome the strong presumption that counsel's performance was within a wide range of professional conduct and that counsel's decisions were the result of reasonable professional judgment, the

reasonableness of which is viewed at the time of trial and under the particular circumstances of the case. *Berry v. State*, 267 Ga. 476, 479 (4) (480 SE2d 32) (1997); *Roland v. State*, 266 Ga. 545, 546 (2) (468 SE2d 378) (1996), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Bagwell does not meet her burden.

(a) Bagwell contends that trial counsel was deficient in failing to object at trial to testimony of the life insurance policies naming Bagwell as beneficiary and in failing to file a motion in limine to exclude such evidence. However, evidence of an insurance policy may be admitted if there is some independent evidence of a nexus between the crime charged and the existence of the insurance policy. *Stoudemire v. State*, 261 Ga. 49, 50 (3) (401 SE2d 482) (1991). See also *Woodham v. State*, 263 Ga. 580, 581 (3) (439 SE2d 471) (1993), reaffirming the holding in *Stoudemire*.

Bagwell's counsel testified at the hearing on the motion for new trial that he did not attempt to exclude the evidence of the policies because the required nexus was amply shown. And so it was. There was independent evidence directly relating the existence of the insurance policies to Bagwell's motive for murder. *Jowers v. State*, 259 Ga. 401, 402 (2) (382 SE2d 595) (1989); *Whittington v. State*, 252 Ga. 168, 174 (5) (313 SE2d 73) (1984). As counsel related, Bagwell made several statements after the killing indicating that she knew of the existence of the insurance before the killing; the quickness of her claims to the proceeds also demonstrated her prior awareness of the insurance; Bagwell expressed possessiveness about the proceeds to a family member; and Bagwell opined that she was arrested because of her claims to the insurance money. Furthermore, Bagwell's complete lack of emotion after her husband's death pointed to the insurance money as the reason for the murder. Compare the facts in *Stoudemire*, supra. Therefore, a motion in limine or other attempt to exclude the evidence would not have been successful.

(b) Bagwell contends that trial counsel was deficient in allowing State's witness, neurosurgeon Rusyniak, who treated the victim, to testify as to his opinion of Bagwell's own medical condition after having suffered an aneurysm because the testimony was improperly based on facts not in evidence. Bagwell's medical condition was in issue because she claimed that her inconsistent versions of events and apparent lack of emotion were the result of the aneurysm and its wake. But, the doctor did not render an opinion, grounded in hearsay, about the defendant's medical state.

In response to the State's question about the difference between an aneurysm and having a lobotomy, Dr. Rusyniak testified generally about the surgical procedure in treating an aneurysm and the patient outcome. On direct, his only testimony about Bagwell was based on his own interaction with Bagwell; he testified that he spoke

with Bagwell on the night of the shooting and that she did not have a problem communicating with him or walking or getting around. On cross-examination, Bagwell's counsel further explored any relationship between an aneurysm and a lobotomy and asked the physician whether he agreed with the assessment that Bagwell's aneurysm surgery had had the effect of a lobotomy. Dr. Rusyniak testified that he disagreed with any finding of an effective lobotomy, and he reiterated that when he interacted with Bagwell, her physical motion appeared to be okay and she seemed to understand what he was saying to her.

While Dr. Rusyniak learned of Bagwell's aneurysm from reading the transcript of the first trial, his testimony makes it plain that his token assessment of her condition was based in large measure on his personal observation of her outward carriage and demeanor. When an expert's opinion is based in part on hearsay and in part on present observation, the testimony may be admitted and the expert's lack of personal knowledge merely presents a jury question about the weight to be accorded the expert's opinion. *Leonard v. State*, 269 Ga. 867 (506 SE2d 853) (1998).

(c) Bagwell fails in her contention that trial counsel was ineffective in not objecting to alleged inadmissible hearsay and character evidence by the State's witnesses as to Bagwell's influence in keeping her husband from his family and Bagwell's apparent failure to grieve for the victim. Bagwell's counsel testified that he did not object to the testimony because it illustrated defendant's demeanor and was admissible evidence to show motive; because he did not believe that it was impermissible evidence of her character; and because he did not want the jury to think Bagwell was trying to conceal something, and thus, alienate the jury.

Even if the evidence of Bagwell's attempt to estrange her husband from his family is considered a negative reflection on her character, evidence which is otherwise relevant to an issue in the case is not rendered inadmissible because it incidentally puts the defendant's character in issue. *Hayes v. State*, 265 Ga. 1, 3 (4) (453 SE2d 11) (1995). The evidence was relevant on the issue of the relationship between Bagwell and the victim. Furthermore, the evidence of Bagwell's apparent indifference to her husband's grave condition was telling on the question of her guilt and on her calculated motive for the killing. See *DeYoung v. State*, 268 Ga. 780, 782 (493 SE2d 157) (1997). Lastly, evidence of such indifference in the telephone conversation between Bagwell and the intensive care unit nurse was not inadmissible hearsay for lack of identity of Bagwell as the caller. See *Brown v. State*, 266 Ga. 723, 725 (3) (470 SE2d 652) (1996). Bagwell's own testimony confirmed the telephone conversation with the nurse. What is more, even if the testimony was characterized as hearsay, it

was merely cumulative of the other evidence of Bagwell's unusual attitude towards her husband's critical condition. *Bridges v. State*, 268 Ga. 700, 708 (6) (492 SE2d 877) (1997).

(d) Bagwell is likewise unsuccessful in demonstrating that trial counsel was ineffective for not objecting to the State's introduction into evidence of several photographs showing the victim in life. Trial counsel did not object because he believed the photographs to be innocuous, and such a determination is not outside the bounds of reasonable professional judgment. *Berry v. State*, supra at 479 (4). Moreover, photographs of a murder victim in life generally are admissible. *Garcia v. State*, 267 Ga. 257 (2) (477 SE2d 112) (1996); *Ledford v. State*, 264 Ga. 60, 66 (14) (439 SE2d 917) (1994).

(e) Nor is trial counsel shown ineffective for allowing the State to introduce into evidence an answering machine tape taken from Bagwell's home without the State first establishing a foundation for admission of the tape. Counsel testified that he did not object to the tape because he thought it assisted Bagwell's cause, and that had the State not sought its introduction, the defense would have endeavored to do so. The apparent timing of the telephone call and substance of the conversation between Bagwell and her father as reflected by the tape are not, as Bagwell maintains, wholly inconsistent with her defense at trial. Thus, defense counsel's election to allow the tape was a matter of tactics and strategy, and whether ultimately "wise or unwise" did not amount to ineffective assistance of counsel. *Berry v. State,* supra at 482 (4) (I), citing *Luallen v. State*, 266 Ga. 174, 177 (3) (b) (465 SE2d 672) (1996).

(f) Bagwell makes two additional claims of ineffective assistance of trial counsel.[2] However, these claims were not raised in the motion for new trial as amended or at the hearing in the matter. Thus, such allegations of ineffectiveness are deemed waived because a defendant is obligated to raise all allegations of ineffectiveness of counsel at the earliest practicable moment. *Hayes v. State*, 262 Ga. 881, 882 (2) (426 SE2d 886) (1993). See also *Stone v. State*, 229 Ga. App. 367, 370 (2) (494 SE2d 48) (1997).

2. A conviction may be based on circumstantial evidence when the evidence excludes every reasonable inference and hypothesis save that of guilt of the accused. *Mullins v. State*, 269 Ga. 157 (1) (496 SE2d 252) (1998). Viewing the evidence in the light most favorable to the jury's verdicts, the jury could have rejected Bagwell's explanation of events and determined that every reasonable hypothesis except Bagwell's guilt was excluded. Id. Thus, the evidence was

---

[2] Bagwell argues that trial counsel was deficient in not objecting on relevancy and foundation grounds to the State's evidence that the police found marijuana in the Bagwell bedroom, and that ammunition identified in a photograph might have been .22 caliber.

sufficient to authorize a rational trier of fact to find Bagwell guilty beyond a reasonable doubt of the malice murder of her husband and possession of a firearm during its commission. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgments affirmed. All the Justices concur.*

DECIDED OCTOBER 26, 1998 —
RECONSIDERATION DENIED NOVEMBER 20, 1998.

*Burkhalter & Burkhalter, Terri L. Burkhalter,* for appellant.

*Tambra P. Colston, District Attorney, Leigh E. Patterson, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Allison B. Goldberg, Assistant Attorney General,* for appellee.