## A02A0685. MIKA v. THE STATE.
(568 SE2d 818)

ANDREWS, Presiding Judge.

Richard P. Mika was found guilty by a jury of selling cocaine in violation of the Georgia Controlled Substances Act. Finding no reversible error in the enumerations raised on appeal, we affirm the judgment of conviction.

1. The State produced eyewitness testimony from three witnesses who saw Mika sell the cocaine. Two police officers working undercover in a nightclub testified that from a distance of about seven yards they saw Mika accept money from Christopher Cash and give Cash a plastic bag containing a white powder that appeared to be cocaine. During the sale, one of the officers walked up directly behind Cash, closely observed the apparent cocaine in Cash's hand, and watched Cash place the apparent cocaine in his pocket. Shortly thereafter, Cash was taken by the officers outside the nightclub where he consented to a search of his person. The officers found the bag of apparent cocaine in Cash's pocket. Tests conducted by the Georgia State Crime Lab confirmed that the substance in the bag was cocaine. Cash, who was charged as a co-defendant with possession of cocaine and pled guilty prior to trial, testified for the State that Mika sold him the cocaine at the nightclub in exchange for two $20 bills. Cash and Mika were arrested at the nightclub, and at least two $20 bills were found in Mika's possession in a search of his person incident to the arrest. Although Mika did not testify, the defense asserted on his behalf at trial was that he did not sell the cocaine, and that Cash gave him money to buy drinks, not to buy cocaine.

The State produced overwhelming evidence in support of its case that was more than sufficient to allow the jury to conclude that Mika

was guilty of selling cocaine beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Mika contends the trial court erred by admitting over his objection a statement he made to police which was obtained by illegal police interrogation.

After Mika was taken into custody and informed of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), he invoked his right not to speak without counsel present. Under *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981), all police interrogation was required to stop at that point and could not resume without counsel present, unless Mika initiated further conversation with the police and waived the invoked right. Nevertheless, without counsel present, a police officer told Mika that he saw Cash give him money, to which Mika responded, "So what does that mean? Maybe he owed me some money. Just because he gave me money does not mean anything."

Assuming Mika's response should have been excluded because the officer's statement was improper interrogation and the officer should have known it was likely to elicit an incriminating response (see *Cottingham v. State*, 206 Ga. App. 197, 200-201 (424 SE2d 794) (1992)), the admission of the response was harmless error under the circumstances. Two undercover police officers testified they saw Mika sell the cocaine in exchange for money from Cash, and Cash testified he bought cocaine from Mika and handed him money. This eyewitness testimony was overwhelming evidence of Mika's guilt. Mika's defense was to admit Cash handed him money to buy drinks, but to deny it was for the sale of cocaine. Mika's response to the officer was merely cumulative of other evidence showing he accepted money from Cash, and it was not necessarily inconsistent with his defense that Cash gave him the money to buy drinks. Under the circumstances, the error, although of constitutional dimension, was harmless because the record establishes beyond a reasonable doubt that it did not contribute to the guilty verdict. *Cox v. State*, 274 Ga. 204, 205-206 (553 SE2d 152) (2001).

3. Contrary to Mika's contention, the trial court did not err by allowing the State to introduce similar transaction evidence showing he was convicted of selling cocaine eight years prior to the present charge.

After a hearing held pursuant to Uniform Superior Court Rules 31.1 and 31.3, the trial court found pursuant to *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991), that there was sufficient similarity between the earlier offense and the present offense so that the former tends to prove the latter, and the former was admissible to show intent, course of conduct, bent of mind, and mode of operation of Mika in the present offense. The evidence showed that in both

offenses Mika sold about one-half gram of powdered cocaine packaged in a similar manner to an individual for cash.

A trial court's admission of similar transaction evidence will be upheld on appeal unless the ruling is clearly erroneous. *Garrett v. State*, 253 Ga. App. 779, 781 (560 SE2d 338) (2002). Here, the prior offense was sufficiently similar to the charged offense and at a minimum showed a similar bent of mind and mode of operation. Moreover, the lapse of eight years between the offenses does not render the prior offense too remote.

> Mere lapse of time between the commission of any prior similar crime and the commission of the offense currently at trial does not render the evidence automatically inadmissible; lapse of time is but one factor to be taken into consideration in determining admissibility. It is . . . the similarity of the offenses within the meaning of *Williams v. State*, 261 Ga. 640, that determines the admissibility of such evidence, not whether the span of time between offenses is brief.

(Citation and punctuation omitted.) Id. at 782; *Mullins v. State*, 269 Ga. 157, 158 (496 SE2d 252) (1998). The trial court was not clearly erroneous in admitting the prior offense as similar transaction evidence.

4. Mika contends the trial court committed reversible error in its instructions to the jury regarding impeachment of a witness convicted of a crime of moral turpitude.

Cash testified without objection that he had been convicted of a crime of moral turpitude, possession of cocaine, for his involvement in the incident at issue, so there was an evidentiary basis for giving the instruction requested by Mika. *Harwell v. State*, 270 Ga. 765, 770 (512 SE2d 892) (1999). The trial court instructed the jury that

> [a] witness may be impeached by (a) disproving the facts to which the witness testified, (b) proof of general bad character, (c) proof that the witness has been convicted of a crime involving moral turpitude, and (d) proof of contradictory statements previously made by the witness as to matters relevant to the witness' testimony and to the case.

Immediately thereafter the trial judge further instructed the jury that

> [i]f any attempt has been made in this case to impeach any witness by proof of contradictory statements previously made *or by proof that the witness has been convicted of a crime involving moral turpitude*, then, Ladies and Gentle-

men, you may determine from the evidence, (a) first, whether any such statements were made and (b) second, whether they are contradictory to any statements the witness made on the witness stand and (c) third, whether it was material to the witness' testimony and to the case. If you find that a witness has been successfully impeached by proof of previous contradictory statements, you may disregard that testimony, unless it's corroborated by other creditable evidence, and the credit to be given to the balance of the testimony of the witness would be for you to determine.

(Emphasis supplied.) The first quoted instruction clearly informed the jurors that they were entitled to conclude Cash was impeached by proof that he was convicted of a crime of moral turpitude. The second quoted instruction informed the jurors with respect to impeachment by proof of prior contradictory statements but inserted, apparently by mistake, the reference (emphasized above) to impeachment by conviction of a crime of moral turpitude which has nothing to do with the instruction on impeachment by prior contradictory statements. Mika contends this had the effect of improperly imposing requirements applicable to impeachment by prior contradictory statement on impeachment by conviction of a crime of moral turpitude. We disagree. Although the mistaken insertion created some confusion, it imposed no such requirements, and the instructions taken as a whole clearly informed the jurors they were entitled to conclude Cash was impeached by his prior conviction. The error was nonconstitutional, and, because it was highly improbable it contributed to the guilty verdict, it was harmless. *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976).

5. There is no merit to Mika's contention that the trial court gave an instruction which erroneously implied to the jurors that he could be convicted on the basis of "grave suspicion" or "mere speculation or conjecture."

In the complained-of instruction, the trial court informed the jurors that

facts and circumstances which merely place upon the defendant a grave suspicion of the crime charged, or which merely raise a speculation or conjecture of the defendant's guilt are not sufficient to authorize conviction of the defendant, but only if the facts and circumstances of this case and all legal deductions thereof — strike that.

Contrary to Mika's contention, the trial court's statement of "strike that" following this instruction could not possibly have given the

jurors the impression that they were entitled to convict him on the basis of "grave suspicion" or "mere speculation or conjecture." Moreover, the trial court gave other instructions which fully and correctly informed the jurors on the State's burden to prove the charges beyond a reasonable doubt.

6. There is no basis for Mika's claim that the trial court erroneously instructed the jurors as to the form of the verdict.

After being informed by defense counsel and the prosecutor that it had misspoken by instructing the jurors that the verdict form would be "guilty" if the jurors did not believe the defendant was guilty or had reasonable doubt as to his guilt, the trial court recharged the jurors to correct this error and properly instructed them that the verdict form would be "not guilty" if they did not believe the defendant was guilty or had reasonable doubt as to his guilt. The error was corrected, and both defense counsel and the prosecutor agreed in the presence of the trial court that the recharge corrected the problem.

7. Finally, Mika contends on various grounds that his trial counsel was ineffective.

> The Sixth Amendment right to assistance of counsel also guarantees a criminal defendant the right to effective assistance of counsel. *Black v. State*, 264 Ga. 550 (448 SE2d 357) (1994). In order to obtain the reversal of a conviction on a claim of ineffectiveness of counsel, a defendant has the burden of proof under both prongs of the test set forth in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). *Zant v. Moon*, 264 Ga. 93, 97 (440 SE2d 657) (1994). Under *Strickland*, supra, the defendant must prove: (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense. In determining whether or not counsel's performance was deficient under the first prong, a court must measure counsel's performance against an objective standard of reasonableness in light of all the circumstances and apply the strong presumption that all of counsel's significant decisions were made in the exercise of reasonable professional judgment. *Strickland*, supra; *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985). Under the second prong, the test is whether there was a reasonable probability that the outcome of the proceedings would have been different but for counsel's deficient performance. Id. "A trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless clearly erroneous." *Williams v. State*, 214 Ga.

App. 106 (446 SE2d 789) (1994). We apply these standards to each of the claims of ineffectiveness.

*Parker v. State*, 220 Ga. App. 303, 306-307 (469 SE2d 410) (1996).

Mika claims trial counsel failed to properly investigate and argue his claim that his pretrial statement to police should have been suppressed as the product of an illegal interrogation. As we concluded in Division 2, supra, even if the statement was erroneously admitted, the error was harmless. Accordingly, Mika cannot show that any claimed deficient performance by counsel would have changed the outcome of the trial.

Mika contends trial counsel failed to properly investigate, argue, and preserve his claim that the similar transaction evidence was erroneously admitted. We considered this claim in Division 3, supra, and concluded that the similar transaction evidence was properly admitted. Accordingly, there is no basis for concluding that trial counsel was ineffective.

Mika argues trial counsel was ineffective for failing to request a jury instruction informing the jurors they could consider Cash's believability as a witness in light of his testimony for the State as a result of a plea in which he received lenient treatment. The record does not support a claim that Cash pled guilty to a lesser offense or received any other lenient treatment. In fact, the record at trial and at the hearing on the motion for new trial showed that Cash pled guilty to possession of cocaine without a negotiated plea agreement and that he had no deal with the State. Trial counsel was not ineffective because there was no reasonable basis for requesting this instruction.

Mika contends trial counsel was ineffective for failing to request a specific jury instruction regarding the credibility of the testimony given by the two undercover police officers. First, the trial court gave a jury instruction concerning the credibility of witnesses which fully covered this issue. Second, trial counsel conducted a vigorous cross-examination and made a forceful closing argument challenging the ability of the officers to observe the cocaine sale in the nightclub. There is no basis for concluding that trial counsel was ineffective for failing to fashion and request the type of specific instruction that present appellate counsel believes would have been more effective.

Mika claims trial counsel was ineffective for failing to request a jury charge regarding the State's violation of the rule of sequestration after it was invoked by the defense. The record shows that Mika's trial counsel objected that a police officer remained in the courtroom in violation of the invoked rule of sequestration, and the trial court overruled the objection. Presumably, trial counsel did not request a jury instruction regarding violation of the rule because the

trial court had already ruled there was no violation. Mika raises no issue on appeal as to the trial court's ruling. In any event, the trial counsel handling this portion of Mika's trial was not called as a witness to explain his decision. "In the absence of contrary evidence, defense counsel's actions are presumed to be part of trial strategy. . . . [Mika] has shown nothing that would demonstrate that his trial counsel failed to exercise reasonable professional judgment in his handling of the case." (Citation and punctuation omitted.) *Thomas v. State*, 268 Ga. 135, 139-140 (485 SE2d 783) (1997).

Lastly, Mika speculates that trial counsel was ineffective for failing to impeach one of the State's witnesses with evidence that he resigned from his prior employment for reasons that could have been used to contest the witness' credibility at trial. In an effort to prove that such evidence existed and that trial counsel was ineffective for failing to find and use it, Mika subpoenaed the witness' personnel files for an in camera inspection by the trial court. At the hearing on the motion for new trial, the trial court informed Mika's appellate counsel that it had reviewed the files and found nothing relevant to Mika's claims. On these facts, we decline to conduct any further review of the files.

> This Court will not review an in camera inspection conducted by the trial court based on speculation that there might be additional material which should have been found and produced for the defense. *Williams v. State*, 251 Ga. 749, 789 (312 SE2d 40) (1983). The trial court's discretionary ruling after an in camera inspection that all exculpatory material, if any, has been produced establishes that as a fact absent a countershowing. *Barnes v. State*, 157 Ga. App. 582, 586 (277 SE2d 916) (1981). The burden is on the defendant to show what was suppressed and how it is materially exculpatory. Id. at 586-589; *Williams*, 251 Ga. at 788-789. [Mika] has failed to satisfy this burden.

*Dunagan v. State*, 255 Ga. App. 309, 312 (565 SE2d 526) (2002).

Moreover, the defense was not entitled to challenge the witness' credibility by questioning about allegations of misconduct unrelated to this case and having no logical connection with the witness' testimony. *Woods v. State*, 210 Ga. App. 172, 173 (435 SE2d 464) (1993). Specific misconduct cannot be used to impeach a witness' character or veracity unless the misconduct results in a criminal conviction, in which case the proper procedure is to prove the conviction by a certified copy thereof. Id.

It follows that there is no support for Mika's claim that trial counsel was ineffective.

*Judgment affirmed. Blackburn, C. J., Johnson, P. J., Smith, P. J., and Mikell, J., concur. Miller and Phipps, JJ., dissent.*

PHIPPS, Judge, dissenting.

I concur fully with the majority in Divisions 5 and 6. I concur in Division 7 except to the extent that it concludes that the errors in Divisions 2 and 3 were harmless. I concur in Division 1 only to the extent that it concludes that the evidence was sufficient to support the verdict. I respectfully dissent from Divisions 2, 3, and 4 and from the judgment.

1. The majority assumes, without deciding, that Mika's pretrial statement to police was the product of improper interrogation, but finds its admission to be harmless error.

Mika's statement was clearly inadmissible because it was obtained in violation of *Edwards v. Arizona*.[1] *Edwards* holds that a defendant who invokes his Fifth Amendment right to counsel after being advised of his *Miranda* rights may not be subjected to further "interrogation" until counsel is made available to him, unless he subsequently initiates communication. " 'The term interrogation under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. . . .' [Cit.]"[2] The officer's remarks to Mika were not "normally attendant to arrest and custody,"[3] and he should have known that if he advised Mika of the incriminating evidence against them, it was reasonably likely that Mika's response would prove incriminating to some degree. Therefore, the trial court erred in denying Mika's motion to suppress his pretrial statement.

Although the State does not raise this issue, the majority takes the position that any error in the admission of Mika's statement was harmless. "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."[4] The prosecution bears the burden of making this showing, and the fact that there was other evidence sufficient to convict does not make the error harmless.[5] The test is whether the evidence may have influenced the jury's verdict.[6]

Contrary to the majority's position, the evidence was not cumu-

---

[1] 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981).

[2] *Cottingham v. State*, 206 Ga. App. 197, 200-201 (4) (424 SE2d 794) (1992).

[3] See *Franks v. State*, 268 Ga. 238 (486 SE2d 594) (1997) (discussing the "routine booking question" exception to the *Miranda* rule).

[4] *Chapman v. California*, 386 U. S. 18, 24 (87 SC 824, 17 LE2d 705) (1967).

[5] *Mangum v. State*, 274 Ga. 573, 577 (2) (555 SE2d 451) (2001).

[6] Id.

lative of other evidence or entirely consistent with Mika's defense. The officers' testimony was that they observed Cash hand money to Mika whereas Mika's statement was an explanation of why Cash gave him money. Mika's statement that Cash may have owed him some money contradicted his defense that Cash gave him money to buy drinks. Because this inconsistency may have influenced the jury's perception of Mika and thereby affected its verdict, Mika is entitled to a new trial.[7]

2. The majority concludes that the trial court properly admitted similar transaction evidence showing that, eight years prior to the present offense, Mika sold one-half gram of cocaine to an undercover drug agent for $50 after being introduced to the agent at an apartment complex in Statesboro. The majority bases its conclusion solely on the similarities between the two offenses and takes the position that the passage of eight years between the two incidents does not render the prior offense too remote. The majority does not discuss the purpose for which the similar transaction was admitted and fails to point out that the passage of time is one of the more important factors to weigh in considering the admissibility of evidence.[8]

Before any evidence of independent offenses or acts may be admitted, the state must make three affirmative showings.[9]

> The first of these affirmative showings is that the state seeks to introduce evidence of the independent offense or act, not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility. The second affirmative showing is that there is sufficient evidence to establish that the accused committed the independent offense or act. The third is that there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.[10]

It is important to keep in mind, however, that the first and third showings are not made in isolation but rather embrace highly interrelated inquiries. This was recognized in *King v. State*,[11] wherein the court observed:

> Indeed, "the test of admissibility of evidence of other criminal acts by the defendant is not the number of similarities

---

[7] See id.

[8] *Mullins v. State*, 269 Ga. 157, 158 (2) (496 SE2d 252) (1998).

[9] *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

[10] (Citation and footnote omitted.) Id.

[11] 230 Ga. App. 301 (496 SE2d 312) (1998).

between the two incidents. Rather, such evidence may be admitted if it is substantially relevant for some purpose other than to show a probability that the defendant committed the crime on trial because he is a man of criminal character." [Cit.] "Similarity is an important factor in determining the admissibility of the extrinsic crime; however, it is not the only factor, nor is it necessarily the controlling factor. The ultimate issue for admissibility is whether the evidence of other crimes has relevance to the issues in the trial of the case at bar. Depending on the purpose for which the extrinsic evidence is offered, the State may be required to prove a high degree of similarity between the relevant characteristics of the extrinsic crime and the crime charged, or it may have only the burden of showing a logical connection between the crimes which are essentially dissimilar. [Cit.]" [Cit.][12]

In this case, the evidence of the independent crime was admitted to show the defendant's intent, course of conduct, bent of mind, and modus operandi. Mika, however, did not raise the issue of criminal intent (mens rea) but rather denied that he committed the act of selling cocaine to Cash (actus reus). Consequently, neither intent nor bent of mind was a disputed issue. Moreover, " '[t]he state of mind that will permit the admission of an unrelated crime is the state of mind at the time of the commission of the offense as shown by the acts or words of the defendant so close in time to the alleged offense as to have a bearing upon his state of mind at that time. . . .' [Cit.]"[13] And "course of conduct," properly construed, means "a continuous course of conduct, closely connected in time, place and manner of commission. [Cit.]"[14] Extrinsic offenses are properly admitted under the modus operandi exception where they are " 'so nearly identical in method [as the crime charged] as to earmark them as the handiwork of the accused.' [Cit.]"[15] Consequently, evidence of Mika's earlier crime was not properly admitted to show either course of conduct or modus operandi in this case. The real role which the extrinsic crime evidence played at trial was simply to show that Mika had sold cocaine before, thereby permitting the jury to infer that he had done so again. "Under our law, however, that is not a permissible basis for introducing similar transaction evidence. [Cit.]"[16]

---

[12] Id. at 302 (1); see *State v. Hinson*, 269 Ga. 862, 863 (506 SE2d 870) (1998) (Fletcher, P. J., dissenting).

[13] *Walraven v. State*, 250 Ga. 401, 408 (4) (b) (297 SE2d 278) (1982).

[14] *Putnam v. State*, 251 Ga. 605, 608 (2) (308 SE2d 145) (1983).

[15] *Felker v. State*, 252 Ga. 351, 360 (1) (a) (314 SE2d 621) (1984); see *Shuman v. State*, 244 Ga. App. 335, 336 (3) (535 SE2d 526) (2000).

[16] *King v. State*, supra at 303.

3. The trial court correctly instructed the jury on impeachment by proof that a witness has been convicted of a crime involving moral turpitude and immediately thereafter erroneously inserted the phrase "or by proof that the witness has been convicted of a crime involving moral turpitude" into an instruction meant only to address impeachment by proof of contradictory statements. Although the additional requirements necessary to impeach by proof of a contradictory statement could not logically be applied to impeachment by proof that the witness has been convicted of a crime involving moral turpitude, the erroneous instruction was nevertheless misleading and confusing. "Where the judge gives a correct instruction upon an issue involved in a criminal case . . . and afterwards gives a further instruction upon the same issue, which is misleading and confusing to the jury, and fails to withdraw such further charge and call the jury's attention to the error, error results."[17]

And the error was not harmless. It was vitally important to Mika's defense that he discredit Cash's testimony, and impeachment by proof that he had been convicted of a crime of moral turpitude was one way to achieve that goal. After the erroneous instruction was given, it is unlikely that the jury clearly understood the requirements for impeachment by that method. Because it is not "obviously highly probable that the error . . . did not contribute to the verdict,"[18] I would reverse.

I am authorized to state that Judge Miller joins in this dissent.

DECIDED JULY 16, 2002

*Jackson & Schiavone, Steven L. Sparger,* for appellant.
*Spencer Lawton, Jr., District Attorney, George R. Asinc, Assistant District Attorney,* for appellee.

---

[17] *Reece v. State*, 210 Ga. 578, 579 (2) (a) (82 SE2d 10) (1954).
[18] (Citation and punctuation omitted.) *Carr v. State*, 251 Ga. App. 117, 120 (3) (553 SE2d 674) (2001) (physical precedent).