## A03A2501. ANDERSON v. THE STATE.

(590 SE2d 729)

BLACKBURN, Presiding Judge.

Following a jury trial, Michael D. Anderson, Jr. appeals his convictions for burglary, possession of tools for the commission of a crime, use of a license plate for the purpose of concealing or misrepresenting the identity of a vehicle, and affixing a license plate with intent to conceal or misrepresent, contending that: (1) the evidence was insufficient to support the possession of tools count; and the trial court erred in: (2) permitting certain testimony; (3) failing to charge on criminal trespass; (4) charging on grave suspicion; and (5) rejecting his ineffective assistance claim. For the reasons set forth below, we affirm.

On appeal, the evidence must be viewed in a light most favorable to the verdict, and Anderson no longer enjoys the presumption of innocence. *Pollard v. State*.[1] Nor can the evidence be reweighed or witness credibility reassessed. *Walters v. State*.[2] So considered, the evidence shows that, in response to a rash of burglaries of new homes still under construction, Williamscraft Group contracted with off-duty police officers for night-time surveillance at the East Park subdivision in Cobb County. Thefts had included the loss of dishwashers, built-in ovens, cooktop ovens, vent hoods, microwaves, kitchen sinks, and door units. Janice Wood, the company's quality control manager, testified that at night the houses were secured and all garage and front doors were locked. Wood stated that a garage door could be opened only by use of a wall switch inside the garage.

At approximately 3:30 a.m., while conducting surveillance, Sergeant Timothy Brooks saw a Ford Expedition enter the subdivision and drive into a cul-de-sac and not come out. Instead of a Georgia license plate, the vehicle displayed a dealer drive-out tag. Suspicious, Brooks contacted police and radioed Sergeant Randy Harris who was also patrolling the area while working off duty. Brooks and Harris then drove separately down a street toward the cul-de-sac from where Brooks proceeded on foot and Harris followed slowly in his vehicle. They saw that the Expedition had been backed into the driveway of a house under contract and nearing completion. The Expedition had broken through a plastic tape barrier staked across the driveway and had its rear hatch open and rear seat folded down. The right side garage door and the door from the garage to the house were open. Interior lights, which had not previously been on, now lit the kitchen and garage. As the officers approached, they saw two men quickly exit the garage. When intercepted, Anderson and Harold

[1] *Pollard v. State*, 230 Ga. App. 159 (495 SE2d 629) (1998).
[2] *Walters v. State*, 244 Ga. App. 657, 658 (538 SE2d 451) (2000).

Jones claimed to be real estate agents but could not produce business cards. Anderson consented to a search of his SUV. Under the seat, Brooks found the current license plate issued to Anderson for the Expedition. When Brooks asked him how the drive-out tag got on his vehicle, Anderson said that he had put it there but could not give a reason for doing so. Brooks noticed scratch marks on the plastic and carpeting, indicating that a heavy object or objects with sharp edges had been hauled in the back. Brooks found a cordless drill and battery pack, channel lock pliers, loping shears or hedge clippers, a Phillips head screwdriver, a flat head screwdriver, and a flashlight. These tools were not organized inside a toolbox but were scattered loosely on the floorboard. Brooks testified that "[t]hey are tools commonly used for burglaries."

On entering the house, Brooks and Harris discovered that the bottom kick plate of the dishwasher had been removed and the stove had been moved a few inches out of place. Harris believed that the appliance was pulled forward so that its wires were visible and "ready to be cut." Brooks explained that since the appliances were installed, tools would be needed to disconnect them. James Pugh, the vice president of Williamscraft Group, testified that it would take about two minutes to disconnect a dishwasher that was already installed.

Brooks determined that entry had been gained through the front door which had been "slipped," meaning that some type of tool, such as a driver's license or credit card, had been put between the locking mechanism and door frame. At defense counsel's request, during cross-examination, Pugh demonstrated that technique for the jury by unlocking a locked door of the courtroom. Anderson's driver's license, entered in evidence, appeared damaged as though used to open up door locks in this manner. According to Wood, after the arrest of Anderson and Jones, the subdivision had no more problem with break-ins.

1. Anderson contends that the evidence was not sufficient to find guilt beyond a reasonable doubt of the possession of tools count. He claims that no witness saw him or his companion "actually using or even holding the tools." He points out that the arresting officer testified that "[t]he tools had not been used inside the residence that I could tell." Anderson argues that, although a witness surmised that he could have used his driver's license to gain entry, the indictment did not list the license as one of the tools.

In pertinent part, the indictment charged Anderson with possession of tools for the commission of a crime by unlawfully having in his possession screwdrivers, flashlights, a cutting tool, and a drill, "equipment and tools commonly used in the commission of a burglary and theft, with the intent to make use thereof in the commission of a

burglary and theft." The evidence showed that on the floorboard of the Expedition, Anderson had screwdrivers, loping or pruning shears, a flashlight, and a cordless drill. Brooks testified that such tools "are commonly used for burglaries." Later, while on cross-examination, Brooks was asked the purpose of the drill and the shears. Brooks explained that by using a drill, a person can screw and unscrew screws more quickly than by hand and that loping shears are used to cut wires and cut tubing.

From the evidence adduced at trial, including the time of night, Anderson's effort to conceal or misrepresent his ownership of the vehicle by use of the drive-out tag, the opened rear door of the Expedition, Anderson's incongruous explanation for his presence at the house, the unauthorized entry of the house, the removal of the kick plate, and repositioning of the stove so that its wires could be cut, we find that a rational trier of fact could have found Anderson guilty of this charge beyond a reasonable doubt. See *Manous v. State*.[3] Anderson's reliance upon *Burnette v. State*[4] is misplaced because here, there was some evidence of forcible entry of the premises and the State presented other evidence from which the jury could conclude that Anderson had those particular tools to disconnect the appliances so that he could steal them. See *Ranson v. State*.[5]

2. Anderson contends that the trial court erred in overruling his objection to the investigating officer's testimony about his conclusions. He claims that whether he committed the two indicted offenses was not beyond the ken of the average person and that the officer should not have been allowed to give his opinion. We decline to reach this issue because Anderson failed to pose a timely objection. See *Ryans v. State*.[6] By the time that Anderson did object, the officer had already testified in detail about his findings and conclusions. By then, the officer had explained that the appliances were connected to the house and that the tools needed to disconnect them were like those "laying [sic] there in the floorboard . . . tools commonly used for burglaries." Anderson's failure to make a specific and timely objection to this testimony waived his right to object on appeal. *Smarr v. State*.[7]

Notwithstanding Anderson's claim to the contrary, this is not a situation in which the doctrine of "plain error" applies. See *Carroll v. State*.[8] In *Paul v. State*,[9] the Supreme Court restricted the application

---

[3] *Manous v. State*, 205 Ga. App. 804, 805 (1) (423 SE2d 721) (1992).

[4] *Burnette v. State*, 168 Ga. App. 578, 579 (2) (309 SE2d 875) (1983).

[5] *Ranson v. State*, 198 Ga. App. 659, 660 (2) (402 SE2d 740) (1991).

[6] *Ryans v. State*, 226 Ga. App. 595, 597 (2) (487 SE2d 130) (1997).

[7] *Smarr v. State*, 199 Ga. App. 572, 573 (2) (405 SE2d 561) (1991).

[8] *Carroll v. State*, 255 Ga. App. 230, 232 (3) (564 SE2d 833) (2002).

[9] *Paul v. State*, 272 Ga. 845, 849 (3) (537 SE2d 58) (2000).

of the plain error rule "to death penalty cases, and other criminal cases in which the trial court violates OCGA § 17-8-57." Here, no such circumstances exist.

3. Anderson contends that the trial court erred by failing to charge on criminal trespass. He asserts that he was entitled to that instruction because it is a lesser included offense of the burglary charge. He points out that he filed two written requests for an instruction on criminal trespass, one of which carefully tracked the statutory definition of that offense.

A request to charge must be apt, a correct statement of law, and precisely adjusted to some theory in the case. *Duncan v. State*.[10] When there is any evidence that the defendant is guilty of the lesser included offense, the trial court must give the charge on the lesser included offense. *State v. Alvarado*.[11] However, when the evidence establishes all of the elements of the indicted offense and there is no evidence raising the lesser offense, there is no error in refusing to charge the lesser offense. *Edwards v. State*.[12]

By Anderson's theory of defense, overzealous officers had intercepted him as he innocently drove about looking at houses. Anderson testified that "as we were getting ready to pull back out" of the subdivision, a vehicle without lights "cuts me off in the street." Anderson denied leaving his vehicle until the officer "directed me to get out of the car and asked me what was going on." When specifically questioned by his lawyer, "[h]ad you been out of the vehicle prior to that?" Anderson denied having done so. Later, during closing argument, defense counsel claimed that "[t]hey weren't in the house at all." Since Anderson denied exiting his vehicle until ordered to do so, an instruction on criminal trespass would not have been adjusted to the evidence. The trial court did not err by refusing the requested charge. See *Raymond v. State*[13] (when defendant asserts a legal presence at the scene without an unlawful intent, issue of criminal trespass is not raised).

4. Anderson contends that the trial court erred in instructing the jury on "grave suspicion." He claims that the charge on grave suspicion violated his right to due process by creating a reasonable likelihood that the jury applied the charge in an unconstitutional manner.

In the complained-of instruction, the trial court charged the jury that "the facts and circumstances which merely place upon a defendant a grave suspicion of a crime charged or which merely raise a speculation or a conjecture of the defendant's guilt, are not sufficient

---

[10] *Duncan v. State*, 213 Ga. App. 394, 397 (6) (444 SE2d 583) (1994).
[11] *State v. Alvarado*, 260 Ga. 563, 564 (397 SE2d 550) (1990).
[12] *Edwards v. State*, 264 Ga. 131, 133 (442 SE2d 444) (1994).
[13] *Raymond v. State*, 170 Ga. App. 676, 677 (2) (318 SE2d 71) (1984).

to authorize a conviction of the defendant." Although Anderson asserts that this language "negates and weakens the reasonable doubt standard," the trial court's other instructions fully and correctly informed the jury on the State's burden to prove the charges beyond a reasonable doubt. See *Mika v. State*.[14]

5. Anderson asserts that the trial court erred in rejecting his ineffective assistance of counsel claim. He contends that his trial counsel failed to adequately investigate his case, did not adequately prepare defense witnesses including ensuring that they wore proper attire, and failed to call material witnesses who would have buttressed his claims that he had a legitimate interest in home renovation and often carried tools in his vehicle.

At the motion hearing, Anderson testified that his trial counsel should have met with him more frequently, needed to personally visit the subdivision, should have better prepared the defense witnesses including their courtroom attire, and should have called three additional defense witnesses. The would-be witnesses were two uncles and a friend all of whom were present or former police officers. Anderson claimed that these witnesses would have established his interest in residential construction and his expertise in remodeling houses. The three men testified at the motion hearing.

Trial counsel disputed Anderson's claims. He testified that he met with Anderson seven times. Trial counsel explained that he had made use of photographs of the subdivision including an aerial photograph because a visit to the now-occupied neighborhood would have accomplished "zilch." He disagreed with Anderson's assertion that the electrician and realtor were not dressed appropriately for court. As to the three would-be witnesses, counsel explained that he had to be very careful about selecting witnesses to ensure that Anderson's felony forgery conviction and robbery conviction did not come in evidence. Defense counsel observed that "renovating houses is not a real good argument when you're over in a brand new subdivision as far as a reason to be there. And also, the question of the use of the appliances. I had to make sure that the jury didn't think that he was over there getting appliances to use in the renovated house." In his opinion, the testimony of two of the witnesses could have been dangerous, and collectively, the testimony of the three witnesses would have been cumulative or superfluous.

To establish an ineffectiveness claim, an appellant must show not only that his counsel's performance was deficient but also that the deficiency prejudiced him. *Rucker v. State*.[15] Failure to satisfy

---

[14] *Mika v. State*, 256 Ga. App. 546, 549 (5) (568 SE2d 818) (2002).
[15] *Rucker v. State*, 268 Ga. 406, 407 (2) (489 SE2d 844) (1997).

both requirements is fatal to such claim. *Brewer v. State*.[16] Here, we cannot say that Anderson made the requisite showing. Since the trial court's finding on the ineffectiveness claim is not clearly erroneous, that finding must be affirmed. *Kelly v. State*.[17]

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

DECIDED NOVEMBER 13, 2003 —
RECONSIDERATION DENIED NOVEMBER 26, 2003.

*Derek H. Jones*, for appellant.

*Patrick H. Head, District Attorney, John A. Pursley, Amelia G. Pray, Assistant District Attorneys*, for appellee.

---

[16] *Brewer v. State*, 224 Ga. App. 656, 657-658 (2) (481 SE2d 608) (1997).

[17] *Kelly v. State*, 267 Ga. 252, 253 (2) (477 SE2d 110) (1996).